David F. DAWSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 277, 1995.

Supreme Court of Delaware.

Submitted: March 19, 1996.
Decided: April 17, 1996.

Kevin J. O'Connell (argued), and Sheryl Rush Milstead, Wilmington, for Appellant.

Loren C. Meyers (argued), and Timothy J. Donovan, Jr., Deputy Attorneys General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND and HARTNETT, JJ., and JACOBS, Vice Chancellor,[1] constituting the Court en banc.

VEASEY, Chief Justice:

This appeal is from the Superior Court's decision and order denying postconviction relief in a case where the defendant was sentenced to death. We find no error in the trial court's disposition of the defendant's contentions, and therefore **AFFIRM** and **REMAND** for resentencing.[2]

---

1. Sitting by designation pursuant to Del. Const., art. IV, § 12, and Supr.Ct.R. 2.

2. Dawson was convicted in 1988 of four counts of Murder in the First Degree, six counts of Possession of a Deadly Weapon During the Commission of a Felony, Robbery in the First Degree, Burglary in the Second Degree, and Possession of a Deadly Weapon by a Person Prohibited. After a two-day penalty hearing, the jury unanimously recommended a sentence of death for Dawson on each of the four counts of Murder in

the First Degree. That conviction was affirmed by this Court. *Dawson v. State*, Del.Supr., 581 A.2d 1078 (1990) (*"Dawson I "*). The United States Supreme Court upheld the convictions but vacated the death sentence. *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). After this Court remanded for a new penalty hearing, *Dawson v. State*, Del.Supr., 608 A.2d 1201, 1206 (1992), and such a hearing was held, Dawson was again sentenced to death. This Court affirmed Dawson's sentences on di-

Defendant-below, appellant, David F. Dawson ("Dawson"), appeals from the Superior Court's denial of all the claims raised in his motion for postconviction relief, filed pursuant to Superior Court Criminal Rule 61. In 1988, Dawson was convicted of, *inter alia*, four counts of first degree murder arising out of the brutal killing of Madeline Kisner in December 1986. In 1993, Dawson was sentenced to death in connection with these convictions.

Dawson's motion for postconviction relief in the trial court raised seven individual claims which Dawson contends justify the reversal of his convictions and sentences and require a new trial, a new penalty hearing, or both. Dawson's claims are as follows: (1) the State wrongfully failed to preserve certain allegedly exculpatory evidence; (2) the State wrongfully withheld allegedly exculpatory evidence; (3) Dawson's constitutional rights were violated in connection with the jury selection process in his 1988 trial and 1993 penalty hearing; (4) the State made improper and prejudicial remarks during the 1988 trial and 1993 penalty hearing; (5) Dawson's defense counsel were ineffective; (6) the Delaware death penalty statute suffers from certain constitutional infirmities, both as applied to Dawson and generally; and (7) Dawson's death sentence for felony murder was unconstitutional. The trial court rejected all of Dawson's claims, holding that they were either procedurally barred or without merit.

Dawson contends that the Superior Court either erred as a matter of law or abused its discretion in denying the relief requested in connection with the seven claims stated above. Dawson also asserts that: (1) the Superior Court infringed his due process rights by refusing to allow discovery in connection with Dawson's Rule 61 motion; and (2) the Superior Court erred by resentencing Dawson *in absentia*. We agree with the well-reasoned opinion of the Superior Court, and hold that the Superior Court neither erred as a matter of law nor abused its discretion.

## I. Facts

A full statement of the facts relevant to the instant appeal is contained in *Dawson I*, Del. Supr., 581 A.2d 1078 (1990), *Dawson II*, Del. Supr., 637 A.2d 57 (1994), and *Dawson III*, Del.Super., Cr.A. Nos. IK86–12–0024R1 and IK87–01–0834R1 through 0847R1, 1995 WL 411372, mem. op. (June 9, 1995). Only a brief summary is necessary for purposes of this appeal.

In the early morning hours of December 1, 1986, Dawson and three fellow inmates, Mark McCoy ("McCoy"), Richard Irwin ("Irwin") and Larry Nave ("Nave"), escaped from the Delaware Correctional Center, near Smyrna, Delaware. Dawson made his way south from Smyrna to Kenton, Delaware where he engaged in a burglary at the home of Dorothy and Frank Seeney ("Seeney"). In that burglary, Dawson stole a leather jacket which was later recovered in Dawson's possession. Shortly thereafter, Dawson unlawfully entered the home of Madeline and Richard Kisner and their son, Brian. Mr. Kisner and his son had left the house by the time Dawson arrived. Mrs. Kisner was not so fortunate, however. Finding Mrs. Kisner alone, Dawson bound, gagged and brutally stabbed her to death.

The additional facts pertinent to this appeal relate to certain details concerning the movements of the escapees and evidence related to such events as the Seeney burglary and the Kisner crime scene. These facts and other facts relating to Dawson's trial theories, postconviction theories and the decisions of trial counsel are developed hereinafter

rect appeal. *Dawson v. State*, Del.Supr., 637 A.2d 57 (1994) *("Dawson II ")*. Subsequently, Dawson filed this motion for postconviction relief in the Superior Court which was denied as to all claims. *State v. Dawson*, Del.Super., Cr.A. Nos. IK86–12–0024R1 and IK87–01–0834R1 through 0847R1, 1995 WL 411372, mem. op. (June 9, 1995) *("Dawson III ")*. The Superior Court then reinstated Dawson's death sentences.

From this denial of postconviction relief and sentence reinstatement, Dawson appeals. The sentence of death was originally scheduled to be carried out on September 8, 1995, but was stayed by this Court to enable the instant appeal to be considered. *Dawson v. State*, Del.Supr., No. 277, 1995, Walsh, J. (Aug. 4, 1995) (ORDER).

under the individual headings of Dawson's contentions to which they relate.

## II. The State's Alleged Failure to Preserve Potentially Exculpatory Evidence

Dawson claims that the State failed to preserve certain allegedly exculpatory evidence in contravention of this Court's holding in *Deberry v. State*, Del.Supr., 457 A.2d 744, 752 (1983). Specifically, Dawson contends that several knives seized from Nave, McCoy and Irwin would have substantiated his claim that these individuals, and not Dawson, were responsible for the murder of Kisner. The Superior Court held that this claim was procedurally barred as a result of Dawson's failure to raise the issue on direct appeal. In light of Dawson's related ineffective assistance of counsel claim, however, the Superior Court analyzed the *Deberry* claim to determine if defense counsel had been responsible for Dawson's failure to raise this issue on direct appeal. After carefully analyzing Dawson's contentions in light of relevant precedents of this Court and the United States Supreme Court, the Superior Court concluded that Dawson's claim was without merit. We agree that Dawson's contentions are without merit, and hold that the Superior Court neither erred as a matter of law nor abused its discretion in finding the claim to be procedurally barred.

 This Court reviews for abuse of discretion the Superior Court's decision on an application for postconviction relief. *Bailey v. State*, Del.Supr., 588 A.2d 1121, 1124 (1991). Nonetheless, questions of law are reviewed *de novo*. *See E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, Del. Supr., 498 A.2d 1108, 1113 (1985).

 Ordinarily, a claim based on allegedly improper destruction of evidence would be evaluated under the test established by this Court in *Deberry*, 457 A.2d at 751–52. In light of Dawson's failure to raise this issue in his direct appeal, however, the Court's review must follow the standards set forth in Superior Court Criminal Rule 61(i)(3), which provides that a claim not previously raised will be procedurally barred unless the defendant can establish: (1) cause for the failure

to raise the claim in the original proceeding, and (2) actual prejudice flowing from the failure to assert the claim. *See also Younger v. State*, Del.Supr., 580 A.2d 552, 555 (1990) (citing *Johnson v. State*, Del.Supr., 460 A.2d 539 (1983), and *Conyers v. State*, Del.Supr., 422 A.2d 345 (1980)).

Although Dawson does not assert any particular cause for his failure to assert the *Deberry* claim, the Superior Court proceeded on the basis that Dawson's related ineffective assistance of counsel claim *might be* sufficient to establish cause under the first prong of the Rule 61(i)(3) test. In essence, the Superior Court reasoned that, if Dawson established the basis for a claim of ineffective assistance, it would be sufficient to show that the *Deberry* claim should have been raised on direct appeal. Thus, prior to analyzing the *Deberry* claim, the trial court turned to the merits of the ineffective assistance of counsel claim. Dawson's ineffective assistance claim is grounded on the fact that defense counsel did not make any effort to obtain or analyze the allegedly exculpatory knives.

 The standard by which an ineffective assistance of counsel claim is reviewed is well known. The defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficiencies in counsel's representation caused the defendant actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 689, 694, 104 S.Ct. 2052, 2065, 2068, 80 L.Ed.2d 674 (1984). Counsel's efforts, however, enjoy a strong presumption of reasonableness. *Flamer v. State*, Del.Supr., 585 A.2d 736, 753–54 (1990). Additionally, prejudice in this context is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Thus, Dawson's claim must overcome the two substantial hurdles set forth in *Strickland*. Upon review of the facts of record and the arguments presented, it is clear that Dawson cannot make a showing sufficient to meet either prong of the *Strickland* test.

 First, counsel's decision not to pursue the evidence seized from Nave, McCoy and Irwin was clearly reasonable. Dawson's ef-

forts to implicate these three men were not credible. Dawson alleged that he was accompanied by the three men from the time they escaped from the Delaware Correctional Center until the time of the murder. Dawson further claimed that he left Nave, McCoy and Irwin at the Kisner household while he went to fill the Kisner car with gasoline. When he returned, Dawson contends, the three men were gone and Mrs. Kisner was dead. This version of the facts is, however, unsupported by the evidence.

Wilbert Dill, the operator of a gas station near Fieldsboro, testified that he observed Nave, McCoy and Irwin near the gas station at approximately 6:40 a.m. Dawson apparently was not with the other prisoners. The record shows that a telephone call was placed from the gas station to Nave's sister, Kathy Spence, at 6:36 a.m. Thus, these three individuals were clearly in Fieldsboro at or near 6:40 a.m. Dawson claimed that the drive from Fieldsboro south to Kisner's home in Kenton took roughly two hours. This would have placed the four men in Kenton 10 minutes after Mrs. Kisner was scheduled to arrive at work. Even assuming that the ride from Fieldsboro to Kenton took less than two hours, physical evidence showed that the Seeney burglary was committed prior to the murder of Kisner.[3] Thus, it would not have been possible for Dawson to have been in Fieldsboro with the three other escapees and still be present in Kenton at the time of the Seeney and Kisner crimes. Further, the car which Dawson claims to have driven with the three other fugitives, was observed in Kenton as early as 6:00 a.m., but certainly no later than 6:30 a.m. Thus, Dawson must have been alone when he committed the crimes in Kenton since the other three men were known to have been in Fieldsboro at that time.

Moreover, Dawson originally told trial counsel that he parted company with McCoy, Nave and Irwin at approximately 2:00 a.m., several hours prior to the Kisner murder. Dawson later changed his account of the events. This latter account apparently was intended to shift blame for the Kisner homicide to the three other inmates. In light of the apparent inconsistencies in Dawson's account, it was reasonable for counsel not to pursue the theory that Nave, Irwin and McCoy were the actual perpetrators of the Kisner homicide.

The physical evidence adduced at trial lends additional support for counsel's decision not to investigate the knives seized from Nave, McCoy and Irwin. As the Superior Court found, there was no evidence presented that would link these individuals to the crime scene. In fact, the knives would not have been admissible at trial because the defense was incapable of laying the necessary foundation.[4] This fact provides further support for counsel's decision not to pursue this defense theory.

Having concluded that defense counsel's decision not to examine the knives from McCoy, Nave and Irwin was reasonable, the trial court then proceeded to analyze the prejudice, if any, that flowed from the State's failure to maintain this evidence. Pursuant to the standard announced in Rule 61(i)(3), the trial court must review the merits of a claim that is procedurally barred only if the defendant shows cause for failure previously to pursue the claim *and* actual prejudice flows from the failure to pursue the claim.

3. Blood with DNA characteristics comparable to that of Mrs. Kisner and triacetate fibers matching those found in Mrs. Kisner's robe were found on the leather jacket that Dawson had previously stolen from the Seeney residence.

4. On December 22, 1986, three weeks after the Kisner homicide, Arizona authorities arrested Nave, McCoy and Irwin and seized from them a number of knives. Because of Arizona's interest in the evidence, however, the knives were not sent to Delaware until April of 1987. Following the trial of Nave, McCoy and Irwin in the spring of 1988, the State disposed of the knives. In May of 1988, prior to Dawson's trial, the Public Defender's Office sought to examine the knives, but they had already been sold at auction. Nevertheless, the physical and circumstantial evidence adduced at trial clearly indicates that Nave, McCoy and Irwin were not present at the murder scene. It is not possible that any of the knives seized from these men was used in the Kisner murder. Accordingly, the failure of defense counsel to have the knives examined does not lend support to Dawson's claim. Defense counsel reasonably concluded that the knives could not be exculpatory and, therefore, counsel's failure to obtain the knives is of no moment.

Having concluded that defense counsel's decision was reasonable, the Superior Court determined that cause for failure to state the claim previously could not be shown. Accordingly, there should have been no need to analyze the element of prejudice. Nevertheless, the court did analyze the prejudice aspect of Dawson's claim, and did so by applying the following factors announced by this Court in *Deberry* to determine if actual prejudice occurred:

1. The degree of negligence or bad faith involved;

2. The importance of the missing evidence considering the probable value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence produced at the trial to sustain the conviction.

*Dawson III*, mem. op. at 15.

■ The Superior Court correctly concluded that no prejudice was shown. First, no prosecutorial bad faith or negligence was demonstrated. The knives in question would not have been admissible at trial. The only connection between the knives and the State's case against Dawson was Dawson's own unsubstantiated account, which was substantially contradicted by the physical evidence. Thus, the State's decision to dispose of the evidence was neither negligent nor done in bad faith.

Second, as discussed above, the evidence was not of any value to Dawson. Thus, the reliability of substitute evidence is not in issue. Finally, the other evidence adduced at trial was clearly sufficient to support Dawson's conviction. Dawson's jacket was found to contain traces of blood matching that of Mrs. Kisner's as well as fibers from Mrs. Kisner's robe. Also in Dawson's possession was a sock found to be identical in all observable respects to the sock used to gag Mrs. Kisner. This physical evidence substantially undermines Dawson's claim that he was not present during the murder of Kisner. In addition, the circumstantial evidence discussed above indicates that it was impossible for McCoy, Nave and Irwin to have been present at the crime scene. Thus, the evidence was sufficient not only to convict Dawson, but also to discredit his version of the events.

In light of the above analysis, it is clear that the Superior Court did not err in holding that Dawson's *Deberry* claim was procedurally barred.

### III. The State's Alleged Failure to Disclose Potentially Exculpatory Evidence

Dawson contends that the Superior Court erred in concluding that his *Brady*[5] claim was procedurally barred by Superior Court Criminal Rule 61(i)(3). Dawson contends that the State withheld potentially exculpatory evidence in contravention of the holding of the United States Supreme Court in *Brady*. Specifically, Dawson argues that the State failed to disclose in a timely manner the fact that the testimony to be offered by Nave's sister, Kathy Spence, had changed dramatically since her initial police interview. The changed testimony, Dawson asserts, substantially undermined his defense, and the State's failure to disclose this change of testimony severely impeded his ability to cross-examine Spence. The Superior Court concluded, however, that Dawson's claim was procedurally barred because Dawson failed to demonstrate either cause or prejudice. We find Dawson's claim of error to be without merit and hold that the Superior Court neither erred as a matter of law nor abused its discretion.

The Superior Court first analyzed Dawson's claim to determine whether the procedural bar of Rule 61 was rebutted. In conducting this analysis, the court determined that the only means of demonstrating cause for failure to raise this claim on direct appeal was the alleged ineffective assistance of Dawson's counsel. The court concluded that, if Dawson showed that his counsel had been ineffective, cause was shown for failure to state the claim on direct appeal. Therefore, the court reasoned, if no *Brady* violation exists on these facts, counsel was not ineffec-

**5.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

tive for failing to pursue the claim, and the claim would be procedurally barred.

■ The starting point for review of this claim is a determination of whether a *Brady* violation actually exists. The United States Supreme Court in *Brady* laid down a three-part test to determine whether particular evidence should have been released to the accused in a criminal case. Evidence must be released if: (1) the evidence is requested by the accused but production is withheld by the State (or barred by the court); (2) the information is favorable to the accused's case; and (3) the evidence is material either to the determination of guilt or to the determination of the appropriate sentence. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Additionally, the Court has made clear that *Brady* applies to impeachment evidence as well as to exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

■ The fact of Spence's changed testimony was disclosed to the defense immediately prior to Spence's testimony. The question presented here is whether the information should have been disclosed at an earlier date. The trial court concluded that the defense was not entitled to prior disclosure, citing *McBride v. State,* Del.Supr., 477 A.2d 174, 181 (1984). *McBride,* however, deals only with the scope of discovery available pursuant to Rule 17(c). It does not address the timing of disclosure of *Brady* materials. Thus, this citation is not dispositive.

Assuming, *arguendo,* that the disputed information should have been disclosed sooner, Dawson fails to meet the showing required to establish a *Brady* violation. The information sought was not favorable to Dawson's case, as required by the second prong of the *Brady* test. In fact, Spence's testimony was quite damaging to Dawson's defense theory. Arguably, the information would have allowed defense counsel to prepare better for cross-examination and this enhanced preparation would have been favorable to the defense. This is not, however, the type of

situation envisioned by the United States Supreme Court in *Bagley,* 473 U.S. at 667, 105 S.Ct. at 3375, where the scope of *Brady* was enlarged to include impeachment evidence. *Bagley* contemplates a situation where the impeachment evidence is directly favorable to the accused, rather than simply providing a basis for investigation.

Nevertheless, Dawson's claim fails on the last prong of *Brady, viz.,* that the evidence be material to the determination of guilt. In the *Brady* context, the United States Supreme Court has made clear that evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Here there is no indication that an earlier disclosure of Spence's changed testimony would have brought about a different outcome. Substantial physical evidence was presented to link Dawson to the murder and significant circumstantial evidence tended to disprove Dawson's theory that McCoy, Nave and Irwin were the perpetrators. Further, defense counsel were able to conduct a full cross-examination of Spence which included: playing the tape of Spence's earlier, inconsistent statement; pointing out the inconsistencies to the jury; and questioning the motive of the witness in changing her statement. On these facts, there is no reasonable probability that the outcome would have been different if the changed testimony had been disclosed sooner.

Dawson showed neither cause nor prejudice.[6] The Superior Court did not err in holding Dawson's *Brady* claim to be procedurally barred.

**IV. The Jury Selection Process in Dawson's 1988 Trial And 1993 Penalty Hearing**

Dawson raises four separate claims concerning the circumstances of the jury selec-

6. The same analysis offered to show that the information was not material is relevant to the question of prejudice. Since disclosure of the material would not have affected the outcome of

the trial, there is no way that the defense could have experienced actual prejudice by virtue of the State's purported failure to disclose timely the change in Spence's statement.

tion process in his 1988 trial and his 1993 penalty hearing. Specifically, Dawson contends that his right to a fair trial was violated in connection with his 1988 trial when the court excluded four prospective jurors for cause, based on their opposition to the death penalty. Dawson argues that the trial court's action made the jury more prone to convict, and thereby violated his right to an impartial jury. He further asserts that striking these jurors violated his right to a jury that fairly represents a cross-section of the community. In addition, he argues that the striking for cause of potential jurors for his 1993 penalty hearing had the same effect. The Superior Court concluded that the claims related to the impartiality of the jury were barred by Rule 61(i)(3) because they were not raised on direct appeal. The court concluded that Dawson's claims that the jury did not fairly represent a cross-section of the community were decided by this Court in Dawson's direct appeal, and are, therefore, barred by Rule 61(i)(4). We agree and hold that the Superior Court neither erred as a matter of law nor abused its discretion.

■ Dawson's arguments related to the impartiality of his 1988 and 1993 juries were not raised in his direct appeals in *Dawson I* and *Dawson II*. Accordingly, these claims are barred by Rule 61(i)(3) unless Dawson can show cause for failure to raise the claims and prejudice flowing from that failure. Dawson makes no effort, however, to establish cause for his failure to assert these claims on direct appeal. Moreover, Dawson cannot demonstrate actual prejudice flowing from this failure: It is well settled that a prospective juror may be excluded from serving in a capital case if his or her views on the death penalty would substantially impair the juror's ability to comply with the instructions of the court or the dictates of the juror's oath. *Lovett v. State,* Del.Supr., 516 A.2d 455, 475–76 (1986), *cert. denied sub nom.,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 504 (1987). Had the claim been raised on direct appeal, it would have been summarily rejected. Thus, failure to raise this claim on direct appeal could not have prejudiced the defense because the claim is devoid of merit. The Superior Court did not err in holding these claims to be procedurally barred.

■ Dawson's arguments relating to his right to a jury that fairly represents a cross-section of the community are without merit. The Superior Court held that these claims were already raised and rejected on direct appeal, and are barred by Rule 61(i)(4). This holding is unassailable. *See Dawson II,* 637 A.2d at 61. Irrespective of the Court's decision in *Dawson II,* however, such claims have been decisively determined to be without merit. *See, e.g., Lovett,* 516 A.2d at 475. We hold that the Superior Court neither erred nor abused its discretion.

## V. Dawson's Claims of Improper Prosecutorial Remarks

■ Dawson contends that certain remarks made by the prosecution during Dawson's 1988 trial and 1993 penalty hearing were improper and unduly prejudicial. The trial court concluded that these claims were procedurally barred by Rule 61(i)(3) and denied Dawson's requested relief. An analysis of the statements complained of and the context in which these statements were made reveals that Dawson's contentions are without merit and the Superior Court did not err in so finding.

The first contested statement of the prosecutor at trial is as follows:

> We don't think this was a reckless killing. We don't think it was a negligent killing. We don't think it was merely a knowing killing. We think it was an intentional killing.

Dawson contends that this statement improperly expressed the prosecutor's subjective view of the defendant's guilt in contravention of established precedent. *See, e.g., Brokenbrough v. State,* Del.Supr., 522 A.2d 851, 858–59 (1987). This Court has held that prosecutors should not state their subjective beliefs in closing arguments. This Court has not held, however, that use of the words "I" or "we" in a closing argument is *per se* improper. Further, even assuming *arguendo* that the statement was improper, Dawson can show no prejudice flowing from the statement. *Id.* The trial court gave an appropriate limiting instruction to avoid any prejudi-

cial effect. *Id.* In light of this fact, it was correct for the trial court to deny Dawson's requested relief. *Id.*

 The second statement at trial is as follows:

Both sides owe you a duty of giving arguments that make sense, that are supported by the evidence and are not refuted by other evidence and it means something ... so we are still here and we are still asking ourselves why? Why? Why?

Dawson contends that this statement left the jury with the erroneous belief that the defense bore some measure of the burden of proof. Further, citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), Dawson asserts that this statement was a comment on the significance of Dawson's failure to testify on his own behalf. Even a cursory reading of this statement reveals, however, that the State sought merely to highlight the deficiencies in the case presented by the defense. Additionally, the prosecutor's question to the jury is merely a comment on the senseless nature of the killing and appears prejudicial only when taken out of context, which the defense has done here. Thus, Dawson has failed to demonstrate that this statement was designed to reflect on the defendant's silence or that the jury would naturally interpret the statement that way. *See, e.g., Hughes v. State*, Del. Supr., Del.Supr., 437 A.2d 559, 573 (1981); *cf. Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355–58 (1991). Accordingly, this statement does not rise to the level of prosecutorial misconduct as Dawson contends.

 Even assuming *arguendo* that the statement was improper, Dawson has failed to demonstrate actual prejudice. The trial judge gave an appropriate limiting instruction informing the jury that the State at all times bears the burden of proof and that no adverse inference should be drawn from the defendant's failure to testify. *Accord Brokenbrough*, 522 A.2d at 851. Accordingly, we conclude that the Superior Court's holding in regard to this statement was correct.

 Dawson next asserts that the prosecutor's exhortation to the jury at trial during rebuttal to "[t]ell everyone that [Dawson] ...

is a murderer" was improper. This statement merely expresses one result of a guilty verdict. Since the State was clearly seeking a conviction in this case, it was no mystery to the jury that a verdict of guilty would tell the world that Dawson is a murderer. This statement was not, therefore, unduly prejudicial and did not undermine Dawson's right to a fair trial. *Cf. Black v. State*, Del.Supr., 616 A.2d 320, 324 (1992) (appeal to jury's societal interest improper).

 Finally, Dawson asserts that the prosecutor's statement to the jury at the penalty hearing that "[a] life sentence for this defendant would be like sending him to his room" undermined Dawson's right to a fair penalty hearing. As the Superior Court concluded, this statement was merely a comment on Dawson's nonamenability to rehabilitation. This is clearly a facet of the case which the jury was permitted to consider. In fact, the futility of rehabilitative efforts is material to the death penalty determination. Thus, this remark was proper under the circumstances and the trial court was correct in so concluding.

## VI. Dawson's Claims of Ineffective Assistance of Counsel

Dawson contends that his trial counsel were constitutionally ineffective. To this end, Dawson points to four alleged instances where counsel failed adequately to represent his interests:

1) counsel's failure to sever Dawson's charge of Possession of a Deadly Weapon by a Person Prohibited; 2) counsel's suggestion during his opening statement that there would be evidence introduced supporting the defendant's version of the facts, including a statement from the defendant; 3) counsel's suggestion, through the cross-examination of State witnesses, that Brian Kisner was somehow involved in the murder of his own mother; and 4) counsel's failure to develop any unifying theory of defense.

Dawson's additional contention, that counsel were ineffective for not exploring Dawson's contention that Nave, McCoy and Irwin actually committed the murder, was addressed and rejected, *supra*. The trial court, after

analyzing the facts and attendant circumstances, concluded that Dawson's ineffective assistance claims were without merit. In light of our review of the factual record and the contentions of the parties, we hold that the trial court's judgment is correct and should not be disturbed on appeal.

■ The Superior Court's denial of Dawson's motion for postconviction relief based on claims of ineffective assistance of counsel is reviewed for abuse of discretion. *Shockley v. State,* Del.Supr., 565 A.2d 1373, 1376 (1989). In discharging its appellate function, the Court must carefully review the record to determine whether competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous. *Id.* (citing *Albury v. State,* Del.Supr., 551 A.2d 53, 60 (1988)).

■ In order to establish a claim of ineffective assistance of counsel, Dawson was required to show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficiencies in counsel's representation caused Dawson actual prejudice. *Strickland,* 466 U.S. at 689, 694, 104 S.Ct. at 2065, 2068. Counsel's efforts enjoy a strong presumption of reasonableness. *Flamer,* 585 A.2d at 753. Prejudice in this context is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* This Court has held that, for a claim of ineffective assistance of counsel to prevail, the defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See, e.g., Wright v. State,* Del.Supr., 671 A.2d 1353, 1356 (1996).

■ A review of Dawson's claims reveals that they are insufficient to meet the required showing of either prong of *Strickland.* In each instance, Dawson provides only conclusory statements that defense counsel acted unreasonably. No support is provided for these assertions and no explanation offered why counsel's actions were allegedly substandard. More significantly, Dawson fails to explain how he was prejudiced by the alleged deficiencies. Pursuant to this Court's holding in *Wright, Younger* and oth-

er cases, failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel. *See, e.g., Wright,* 671 A.2d at 1356. Thus, the Superior Court was correct in denying Dawson's requested relief.

## VII. Dawson's Claims that the Death Penalty Statute is Unconstitutional

Dawson contends that the Superior Court erred in concluding that there were no constitutional infirmities in the Delaware death penalty statute, either as administered generally, or as applied to Dawson. Dawson points to the four following alleged constitutional infirmities:

### A. Arbitrary Imposition of the Death Penalty

■ Dawson contends that the Delaware death penalty statute provides insufficient guidance to the trial judge on the question of how much weight to ascribe to the jury's recommendation. This claim was explicitly rejected by the United States Supreme Court in *Harris v. Alabama,* —— U.S. ——, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). The Court there held that "the Eighth Amendment does not require the State to define the weight the sentencing judge must accord to an advisory jury verdict." *Id.* at ——, 115 S.Ct. at 1036. Accordingly, Dawson's first contention is without merit.

### B. Cruel and Unusual Punishment

■ Dawson contends that lethal injection, the method of execution now used in Delaware, is cruel and unusual punishment in contravention of the United States Constitution and cruel punishment in contravention of the Delaware Constitution. Dawson argues that the State has failed to install appropriate safeguards in the administration of the injection to avoid unnecessary pain and suffering of the prisoner. Since Dawson failed to raise this claim on direct appeal, it is procedurally barred by Rule 61(i)(3) unless Dawson can show cause and prejudice, which Dawson does not address. It would be impossible for Dawson to make the requisite showing of prejudice since an identical claim

has already been rejected by this Court in *State v. Deputy,* Del.Super., 644 A.2d 411, 420–22 (1994), *aff'd,* Del.Supr., No. 225, 1994, Holland, J. (June 21, 1994) (ORDER). Thus, Dawson's second contention is without merit.

## C. Preemption by Federal Law

■ Dawson next contends that Delaware's lethal injection statute is preempted by federal law in that "it permits correctional officers to obtain the controlled substances necessary for the execution, in violation of the Federal Drug Abuse Prevention and Control Act, 21 *U.S.C.* § 801, *et seq.,* and the Federal Food, Drug and Cosmetic Act, 21 *U.S.C.* § 353(b)(1)." This claim is procedurally barred by virtue of Dawson's failure to raise the issue on direct appeal. Dawson can establish neither cause nor prejudice to rebut the procedural bar. *See Deputy,* 644 A.2d at 417–20 (rejecting preemption claim). Thus, the Superior Court correctly concluded that this claim is devoid of merit.

## D. The Retroactive Application of Delaware's Revised Death Penalty Statute

■ Dawson next asserts that application of the 1991 Delaware death penalty statute to punish Dawson for crimes committed in 1988 constitutes an impermissible *ex post facto* law, in contravention of the United States Constitution, art. I, § 10. This argument was raised and rejected in *State v. Cohen,* Del.Supr., 604 A.2d 846, 852–55 (1992). This Court has ruled that the *Cohen* decision is applicable to Dawson's case. *Dawson II,* 637 A.2d at 60–61. Thus, Dawson is procedurally barred by Rule 61(i)(4) from reasserting this claim. Dawson has failed to demonstrate that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish him." *Flamer,* 585 A.2d at 746. This claim was, therefore, properly rejected.

## VIII. Dawson's Claim That His Death Sentence For Felony Murder Is Unconstitutional

■ Dawson contends that the interplay of the Delaware death penalty statute and the Delaware felony murder statute is unconstitutional in failing to narrow sufficiently the class of death-eligible defendants. This claim was not raised on direct appeal. It is, therefore, procedurally barred. Dawson has not shown cause for failure to raise the issue on direct appeal. Moreover, Dawson has not demonstrated actual prejudice. Dawson was convicted of recklessly causing the death of another during commission of a felony pursuant to 11 *Del.C.* § 636(a)(2) and negligently causing the death of another during commission of a felony pursuant to 11 *Del.C.* § 636(a)(6). Even if this Court were to vacate the two death sentences imposed upon Dawson in connection with the felony murder convictions, Dawson would still be subject to two additional death sentences. This argument is, therefore, unavailing. *Cf. Williamson v. State,* Del.Supr., 669 A.2d 95, 98–99 (1995).

## IX. Dawson's Discovery Requests

■ Dawson contends that the Superior Court abused its discretion in refusing to permit discovery of certain police reports sought in connection with Dawson's motion for postconviction relief. Dawson contends that these reports would have assisted him in discrediting the testimony of Kathy Spence and proving his theory that Nave, McCoy and Irwin committed the Kisner murder. The Superior Court granted certain of Dawson's requests but denied the requested police reports because "good cause" for their production had not been shown. The decision of a trial court to refuse additional discovery in a Rule 61 proceeding is reviewed for abuse of discretion. *Hooks v. State,* Del. Supr., 416 A.2d 189, 200 (1980); *see also State v. Lewis,* Fla.Supr., 656 So.2d 1248, 1249 (1994). We find that the trial court's ruling is well founded in the evidence and Dawson has provided no basis for a finding of abuse of discretion.

■ Superior Court Criminal Rule 61 makes no provision for additional discovery. The trial court concluded, however, that it possessed "the inherent authority under Rule 61 in the exercise of its discretion to grant particularized discovery for good cause shown." The court based this ruling on the provision in analogous federal proceedings

allowing discretionary discovery. *See* RULE 6(A) OF THE RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS. No challenge has been raised to the exercise of this discretionary authority.

Dawson contends, however, that the trial court abused its discretion in not permitting discovery of the police reports detailing investigations of Kathy Spence's proffered testimony and other evidence relating to the arrest of Nave, Irwin and McCoy. Dawson contends that these materials constitute *Brady* materials and are, therefore, discoverable as of right. This claim was raised and rejected, *supra.* As noted, the information sought does not fall within the purview of *Brady.* Moreover, these materials are not discoverable under a good cause standard because Dawson has shown no compelling reason for their discovery. At trial, substantial physical and circumstantial evidence was produced discrediting Dawson's account of the circumstances of the crime. Thus, the information sought was not relevant to any plausible defense theory. The trial court did not abuse its discretion in refusing discovery of the requested reports.

## X. Dawson's Claim that the Superior Court "Illegally" Sentenced Him *in Absentia* on June 9, 1995

Dawson argues that the Superior Court violated his statutory and common-law rights by setting, in his absence, a new execution date. The State argues that the setting of a new execution date is not tantamount to the imposition of a final sentence and does not give rise to a right to be present, a right to be heard or a right to counsel. Based on prior precedent of this Court, we find Dawson's claim to be without merit and hold that the trial court was free to sentence Dawson *in absentia* under these particular circumstances.

The action of the Superior Court in setting Dawson's execution date in his absence involves a question of law. This Court's review is therefore *de novo. E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co., supra.* As this Court held in *Hooks v. State,* Del.Supr., 429 A.2d 1312, 1313 (1981):

The norms governing sentencing proceedings are well settled: thus, (1) a defendant has a right to be present at the imposition of final sentence, *United States v. Behrens,* 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963); (2) he has a right to counsel at that time, *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); (3) the Trial Judge is required to address a defendant personally at that time and to ask him if he wishes to make a statement in his own behalf and/or to present any information in mitigation of punishment, *Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); *Ball v. United States,* 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (1891). Those norms, whether derived from the common law or constitutionally based, are followed in our practice and are codified in Superior Court Criminal Rules 43 and 32(a). We have no doubt that the imposition of sentence is a critical stage in the proceeding and, for that reason, both defendant and counsel are required to be present. *Mempa v. Rhay, supra; United States v. Behrens, supra.*

In *Hooks,* this Court was called upon to determine whether or not the defendants' right to be present during sentencing was offended where the trial court, in the defendants' absence, reduced the defendants' sentences from death to life imprisonment. *Hooks* came about in the wake of a United States Supreme Court holding that mandatory death penalty statutes were unconstitutional. The Delaware statute, however, included a provision that, if a death sentence imposed under the statute is found unconstitutional, the sentencing court *must* impose a sentence of life imprisonment. This Court held that, since the reduction in sentence was mandatory under the applicable statute, the defendants need not be present. *Hooks,* 429 A.2d at 1314.

The holding of *Hooks* is controlling in the case at bar. The Superior Court did not have discretion to reduce Dawson's sentence. Once Dawson's collateral attack had been rejected, the Superior Court was empowered only to reinstate the death penalty. As the *Hooks* Court held: "Given the fact that (a)

when the original sentences were imposed defendants were in court with counsel and had an opportunity to be heard both personally and through counsel, and that (b) the Trial Judge had no discretion in imposing the life sentences after remand, we find no reversible error in these special circumstances." *Hooks,* 429 A.2d at 1314. Under the circumstances, and in the absence of any compelling reason to deviate from established precedent, this contention must fail.

## XI. CONCLUSION

The trial court carefully considered Dawson's allegations, treating each such claim with the gravity which it deserved in a capital case. The trial court correctly concluded that each of Dawson's claims was either procedurally barred or without merit. Dawson has not demonstrated any error of law or abuse of discretion requiring reversal. Accordingly we **AFFIRM** the Superior Court's decision denying Dawson's requested post-conviction relief and reinstating Dawson's capital sentence. We **REMAND** to the trial court for the purpose of setting a new execution date.