**Leon WILSON, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

**No. 120, 2003.**

Supreme Court of Delaware.

Submitted: Aug. 26, 2003.
Decided: Oct. 7, 2003.

---

Christopher D. Tease, Wilmington, DE, for the Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for Appellee.

Before HOLLAND, STEELE, and JACOBS, Justices.

JACOBS, Justice:

The defendant-below, appellant, Leon Wilson ("Wilson"), appeals from a bench ruling of the Superior Court denying Wilson's motion to withdraw his guilty plea on the ground of constitutionally ineffective assistance of counsel. The motion was denied on the ground that the evidence presented at the Rule 61 hearing established that Wilson had knowingly, intelligently and voluntarily entered a guilty plea, and that the record did not support his claim of ineffectiveness of counsel.[1] We agree and affirm.

## I.

On September 10, 2002, Wilson was scheduled to be tried in the Superior Court on charges of robbery in the first degree and certain related offenses. Two days after that trial, Wilson was scheduled to begin another trial in Superior Court on domestic violence charges. Five days thereafter, Wilson was scheduled to begin a third trial on charges that included trafficking in cocaine. For these first three sets of charges, Wilson was represented by James A. Bayard, Jr., Esquire ("Bayard") of the Public Defender's Office.

---

1. Tr. of Rule 61 Hearing, Jan. 31, 2003 at 75.

In addition to, and apart from, those three sets of charges, Wilson was awaiting a trial date on a fourth set of charges that included trafficking in cocaine. Because Bayard's representation of Wilson on the fourth set of charges created a conflict of interest, Jennifer Kate Aaronson, Esquire ("Aaronson") was assigned to represent Wilson on these latter charges.

During plea negotiations on the first three sets of charges, Bayard obtained permission from Aaronson to attempt to resolve by a plea agreement all four sets of charges.[2] Negotiations between Bayard and the Delaware Attorney General's Office resulted in several written plea offers that would have disposed of some or all of the charges for which Bayard was serving as Wilson's defense counsel.[3] Bayard also recalled receiving an oral plea offer that would have disposed of all the charges pending against Wilson, including those being handled by Aaronson.[4]

On September 10, 2002, before the trial on the first set of charges, Wilson pled guilty to two counts of second degree robbery and to one count of trafficking in cocaine over fifty (50) grams. That plea, arranged by Bayard and read into the record by the State, resolved the first and third sets of charges pending against Wilson.[5] During the plea colloquy, the Court asked Wilson—and Wilson answered to the Court's satisfaction—questions intended to establish that he was entering into the plea agreement freely and voluntarily.[6]

Approximately two months after he was sentenced, Wilson moved under Superior

---

2. *Id.* at 25.

3. *Id.* at 26 and 42. This included six over the course of more than a year that were rejected and the seventh, which Wilson accepted. *See id.* at 42.

4. *Id.*

5. On September 10, 2002, during the plea colloquy, the State read into the record the following plea agreement:

   This is a plea in the matter of State v. Leon Wilson, which is on trial today. It also resolves a set of charges that is scheduled for next Tuesday. *There is a set [of charges] for this coming Thursday which is not included in this agreement.* The case numbers which this plea encompasses are as follows: 0107004022 and 0104008467.

   As to the first set, Mr. Wilson will be pleading guilty to robbery in the second degree, a lesser included offense; and Count III, robbery, second degree, a lesser included offense; and Count I, trafficking over 50 grams Mr. Wilson will be pleading guilty to. State will be entering nolle prosequi on all remaining charges on both referenced case numbers.

   Tr. of Change of Plea Hearing, Sept. 10, 2002 at 3.

6. After the State read the plea agreement into the record, the Court asked Appellant the following questions:

   The Court: Have you freely and voluntarily decided to enter this plea today?
   The Defendant: Yes, I have....
   The Court: The plea agreement I have says that you're going to enter a plea of guilty to two counts of robbery in the second degree and one count of trafficking over 50 grams of a controlled substance. The State, in return, will drop any remaining charges against you in these indictments... is that your understanding?
   The Defendant: Yes, I do....
   The Court: Has anybody promised you anything in addition to this to get you to plead guilty?
   The Defendant: No, they haven't....
   The Court: Has anybody threatened or forced you to plead guilty?
   The Defendant: No....
   The Court: Have you discussed your case and your rights with your lawyer?
   The Defendant: Yes, I have....
   The Court: Are you satisfied with his advice?
   The Defendant: Yes, I am....
   The Court: The Court finds then that the guilty pleas are knowingly, voluntarily, and intelligently made. I direct a finding of guilt be entered.
   *Id.* at 4–8.

Court Criminal Rule 61 to withdraw his guilty plea, claiming that Bayard had provided ineffective assistance of counsel in connection with that plea. Specifically, Wilson claimed that Bayard misled him to believe that the plea agreement, besides resolving the first and third set of charges, also resolved the fourth set of charges for which Wilson was being represented by Aaronson.[7] Wilson bases this claim on a statement Bayard made following the State's sentencing recommendation, that "the plea today might resolve Ms. Aaronson's case she has with Mr. Wilson."[8]

Bayard conceded that during the plea colloquy he had told the trial court that "it appears the plea today might resolve Ms. Aaronson's case she has with Mr. Wilson." But at the hearing on the Rule 61 motion, he explained, "it seems that I misspoke."[9] Bayard further testified that on the day of the plea agreement, he spoke with Wilson about a plea offer that would resolve the charges being handled by Aaronson,[10] but Wilson "was not interested in that" and "was hot go to trial with Ms. Aaronson's case."[11] Bayard testified that he told Wilson, and Wilson understood, that the charges being handled by Aaronson would be going to trial.[12] At the Rule 61 hearing, Aaronson also testified that after Wilson entered the guilty plea, he told Aaronson that he did not want to accept a plea agreement covering this fourth set of charges, because he was convinced that the principal prosecution witness would not show up at the trial to testify.[13]

At the conclusion of the Rule 61 hearing, the trial court found that Wilson understood exactly what plea he had agreed to, and that there was "no doubt [that sometime after sentencing], [Wilson] decided that that may not have been the best decision."[14] Having found that Wilson had knowingly and intelligently entered into the plea agreement, the Superior Court denied Wilson's motion to withdraw his guilty plea. Wilson then filed a timely appeal to this Court.

## II.

▮ On this appeal, Wilson claims that Bayard provided constitutionally inef-

---

7. The domestic violence charges (the third set of charges) appear to have been dismissed for reasons that are not clear.

8. The entire statement made by Mr. Bayard is as follows:

> That is our understanding of the plea agreement. I think, for sake of just completeness, there is a case still pending against Mr. Wilson that's going to be set for trial this Thursday. There is another one that Ms. Aaronson, Kate Aaronson is representing him on. I don't know what its trial schedule is, but it appears that the plea today might resolve Ms. Aaronson's case she has with Mr. Wilson.
>
> Having said all that, Mr. Wilson and I have been over this a number of times now, Your Honor. I believe he's prepared to answer the Court's questions regarding this plea. If the court does accept it, we are going to ask the Court to consider immediate sentencing.

Tr. of Change of Plea Hearing at 3.

9. *Id.* at 42.

10. Tr. of Rule 61 Hearing, Jan. 31, 2003 at 27.

11. *Id.* at 29.

12. *Id.* at 42.

13. Ms. Aaronson testified at the Rule 61 hearings:

> Q: And had, was there any discussions as to why that case hadn't been resolved, your case hadn't been resolved?
> A: Yes. He thought the victim wouldn't show up in the robbery case.
> Q: Is that the reason why he didn't want to plead guilty?
> A: Yes.

*Id.* at 51.

14. *Id.* at 74.

fective assistance of counsel. This Court reviews for abuse of discretion a Rule 61 denial of a motion for post-conviction relief, including a motion relief based upon a claim of ineffective assistance of counsel.[15] In discharging its appellate function, this Court "must carefully review the record to determine whether competent evidence supports the [lower] court's findings of fact and whether its conclusions of law are not erroneous."[16]

■ To establish constitutionally ineffective assistance of counsel, the Rule 61 claimant must establish that: 1) counsel's representation fell below an objective standard of reasonableness, and 2) the deficiencies in counsel's representation caused actual prejudice.[17] Actual prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18] To establish prejudice, a defendant must demonstrate a reasonable probability that he would not have entered into the plea agreement, and instead would have gone to trial on the charges that were resolved by the guilty plea. Wilson has not carried that burden.

■ Wilson bases his ineffective assistance claim on Bayard's statement to the trial court, during the plea colloquy, that "it appears the plea today might resolve Ms. Aaronson's case she has with Mr. Wilson." That statement, Wilson contends, misled him to believe that the plea agreement would dispose of all four sets of charges pending against him, including the charges for which Aaronson was representing him. A review of the entire record, however, establishes that Wilson would have gone to trial despite Bayard's statement.

The plea colloquy, when reviewed in its entirety, establishes that Wilson understood precisely what charges the plea agreement was resolving. During the plea colloquy, the prosecution stated on the record that the plea agreement would resolve two sets of charges pending against Wilson, and the prosecutor read the two case numbers into the record. Thereafter, Bayard clarified (again, of record) that two cases were still pending against Wilson, the first having been set for trial two days thereafter (the domestic violence charges), and the second set being the charges for which Wilson was represented by Aaronson. The trial court then repeated the charges that the plea agreement was resolving, and Wilson responded that he understood.[19] At no time did Wilson suggest that the terms of the plea agreement to which he had agreed were different from what had been stated on the record.

The testimony taken at the Rule 61 hearing on Wilson's motion to withdraw his guilty plea, confirms that Wilson understood that the plea agreement did not resolve the charges for which Aaronson was his counsel. Bayard testified that although he had negotiated a deal to resolve

15. *MacDonald v. State,* 778 A.2d 1064, 1070 (Del.2001).

16. *Dawson v. State,* 673 A.2d 1186, 1196 (Del. 1996).

17. *Dawson,* 673 A.2d at 1190 *citing Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

18. *Id.*

19. After restating the charges to which Wilson was pleading guilty, the Court asked Wilson whether "anybody promised you anything in addition to this to get you to plead guilty?" Wilson responded, "no, they haven't." Then, the Court asked Wilson whether Bayard had discussed the case with him and whether he was satisfied with the advice given by Bayard. Wilson responded, "yes, I am." Tr. of Change of Plea Hearing at 4–8 (*see* A–9—A–13).

all charges then pending against Wilson, his client rejected that deal because he was "not interested" in a plea that would dispose of the charges being handled by Aaronson.

Consistent with Bayard's testimony, Aaronson testified that during her post-plea agreement meetings with her client, Wilson never told her that he had already pled guilty to the charges for which she was representing him. Nor (Aaronson testified), did Wilson want to plead guilty to those charges because he believed that the principal prosecution witness would not show up to testify at trial.

Applying the test in *Strickland v. Washington*,[20] we conclude that Wilson cannot prevail on a claim of ineffective assistance of counsel. To satisfy the *Strickland* test, Wilson must show by a reasonable probability that, but for Bayard's unprofessional errors, he would have rejected the plea agreement. But, the record shows that Wilson understood that the plea agreement would not resolve the charges being handled by Aaronson, and that Wilson wanted to go to trial on those charges. Accordingly, if Bayard made any unprofessional errors, they had no effect upon Wilson's decision to accept the guilty plea or upon the outcome of the case.

### III.

For the foregoing reasons, the Superior Court's denial of Wilson's motion to withdraw his guilty plea is AFFIRMED.

---

**20.** *See* text accompanying note 17, *supra*.