IN THE SUPREME COURT OF THE STATE OF DELAWARE

HOWARD WALSH, §
§
Defendant Below, § No. 530, 2018
Appellant, §
§ Court Below—Superior Court
v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 1410004172
§
Plaintiff Below, §
Appellee. §

Submitted: January 25, 2019
Decided: March 11, 2019

Before **STRINE,** Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

(1)     The appellant, Howard Walsh, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61. After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)     The record reflects that on May 13, 2015, a Superior Court jury found Walsh guilty of three counts of Possession of a Firearm by a Person Prohibited ("PFBPP") and one count each of Possession of Firearm Ammunition by a Person Prohibited, Carrying a Concealed Dangerous Instrument, and Criminal Impersonation. The evidence presented at trial established that Walsh was convicted of Burglary in the Second Degree, a felony, in New York in 1988. On

October 6, 2014, Walsh was seated in the driver's seat of a Nissan Sentra in front of a gun shop. A male customer observed a female customer buying a gun and then exiting the store, approaching the car, and giving Walsh the gun she had purchased. The male customer, who was retired from the military and had experience with guns, saw that Walsh was wearing a camouflage flak jacket and heard Walsh rack a gun.

(3) The Delaware State Police were notified of suspicious activity. Trooper Jason Fischetti arrived on the scene and approached Walsh. Fischetti saw that, in addition to wearing the flak jacket, Walsh was wearing a badge around his neck that said "Carry Concealed Permit." Fischetti also saw a black and magenta handgun on the floor of the passenger side of the car. Walsh told Fischetti that his wife had purchased the gun for protection because they lived in a bad neighborhood.

(4) Corporal Christopher Popp then arrived on the scene. When Popp asked Walsh to identify himself, Walsh said he was a detective and then laughed and gave his name. Popp arrested and searched Walsh and found that he had an electronic control device labeled "Police" in a pocket of the flak jacket that he was wearing. Walsh also was wearing a holster, which he explained he used to carry other guns around his home. After Walsh consented to a search of his home and provided the police with the key to a storage container that was located in his closet, the police found two black powder firearms and black powder ammunition.

2

(5) Walsh testified that his wife bought the black and magenta gun for herself because she had jewelry and they lived in a bad neighborhood. He testified that he never touched the black and magenta gun. He further testified that when he had purchased the black powder guns at a gun convention shortly before his arrest, a Philadelphia police officer told him it was lawful for him to buy those items.

(6) Walsh was sentenced under 11 *Del. C.* § 1448(e)(1)(c)[1] to minimum mandatory Level V time of ten years for each of the PFBPP convictions. He was sentenced to three years of suspended Level V time on the remaining convictions. This Court affirmed on direct appeal.

(7) Walsh then filed a *pro se* postconviction motion. The Superior Court appointed postconviction counsel to represent him, and Walsh's appointed counsel filed an amended motion. Walsh later sought to discharge his postconviction counsel and proceed *pro se*. The Superior Court granted his request, ordering that all previously filed postconviction motions would be deemed moot and Walsh would be permitted to file an amended postconviction motion incorporating all the claims that he wanted the Court to consider.

(8) In his amended motion for postconviction relief, Walsh argued that his trial counsel was ineffective for failing to (i) seek to suppress evidence obtained from

---

[1] Section 1448(e)(1)(c) provides for a minimum sentence for PFBPP of ten years at Level V "if the person has been convicted on 2 or more separate occasions of any violent felony." In addition to the prior burglary conviction, Walsh had previously been convicted of second-degree assault.

the search of Walsh's home on the grounds that the police coerced his consent, which Walsh asserted would have been shown by police car dashcam video footage that counsel failed to obtain; (ii) object to certain statements made by the prosecutor during opening and closing arguments; (iii) object to the presentation of evidence of his prior burglary conviction at trial; and (iv) present a mistake of law defense. In addition to his claims of ineffective assistance of counsel, Walsh argued that (v) the State violated his due process rights by allegedly coercing his consent to search his home and failing to preserve and produce the purported dashcam video footage; (vi) his due process rights were violated because a juror allegedly overheard defense counsel speaking with Corporal Popp about the case during a recess; (vii) his due process rights were violated when the prosecutor engaged in alleged misconduct; and (viii) his postconviction counsel was ineffective by failing to pursue the arguments that Walsh made in his amended Rule 61 motion.

(9) The Superior Court rejected each of Walsh's claims, and Walsh now appeals to this Court. We address Walsh's arguments on appeal in turn.

(10) We review the Superior Court's denial of postconviction relief for abuse of discretion and review questions of law *de novo*.[2] The Court must consider the procedural requirements of Rule 61 before addressing any substantive issues.[3]

---

[2] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[3] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

4

Rule 61(i)(3) provides that any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the defendant can establish cause for relief from the procedural default and prejudice from a violation of the defendant's rights. To establish cause, the movant must establish that an external impediment prevented him from raising the claim earlier.[4] To establish prejudice, the movant must show actual prejudice resulting from the alleged error.[5]

(11) As the Superior Court correctly recognized, Rule 61(i)(3) did not bar Walsh's ineffective assistance of counsel claims, but it did bar his due process claims relating to the search of his home, the alleged dashcam video footage, and the purported prosecutorial misconduct. Walsh did not raise these arguments during trial nor during his *pro se* direct appeal, and he has not demonstrated any cause for his failure to do so. Moreover, the Superior Court determined that there was never any dashcam footage; Walsh therefore could not have been prejudiced by the failure to produce any footage. And our review of the record does not reveal any abuse of discretion in the Superior Court's conclusion that the prosecutor's remarks during

---

[4] *Id.* at 556.
[5] *Id.*

5

opening and closing statements were "legitimate inferences . . . that flow from th[e] evidence" and therefore did not prejudice Walsh.[6]

(12) A claim of ineffective assistance of counsel can constitute "cause" under Rule 61(i)(3).[7] In order prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[8] Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[9] A defendant must also make concrete allegations of actual prejudice to substantiate a claim of ineffective assistance of counsel.[10]

(13) Walsh's first ineffective assistance argument is that trial counsel was ineffective because he did not seek production of the alleged dashcam video, which Walsh asserts would have shown that the police coerced him into consenting to search of his home, and did not seek to suppress evidence obtained from the search

---

[6] *State v. Walsh*, 2018 WL 4638010, at *3 (Del. Super. Ct. Sept. 26, 2018). On appeal, Walsh has not raised his claim that his due process rights were violated because a juror allegedly overheard defense counsel speaking with Corporal Popp about the case during a recess. Any challenge to the Superior Court's ruling on that issue is therefore waived. SUPR. CT. R. 14(b)(vi)(A)(3); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

[7] *Cook v. State*, 2000 WL 1177695, at *3 (Del. Aug. 14, 2000).

[8] *Harris v. State*, 2018 WL 3239905, at *2 (Del. July 2, 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

[9] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[10] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

6

of Walsh's home on the grounds that the consent was coerced. The affidavit provided by trial counsel in connection with the postconviction proceedings indicated that counsel spoke with Walsh about the conversations he had with police officers and, considering those discussions and other discovery, concluded that there was no merit to a suppression motion. Based on that affidavit, the Superior Court held that there was no evidence that trial counsel's representation was unreasonable. The Superior Court also held that Walsh could not demonstrate prejudice from a failure to file a suppression motion that was not likely to succeed.[11] We find no abuse of discretion in those conclusions.[12]

(14) Walsh next argues that trial counsel was ineffective because he failed to object to certain statements that the prosecutor made during opening and closing arguments. Specifically, Walsh contends that the prosecutor "became a witness" during his closing statement when he said that "the reason [the witness from the gun shop] said he didn't see the gun was because the defendant put the gun down while racking it." And he argues that the prosecutor committed some unspecified

---

[11] *See Walsh*, 2018 WL 4638010, at *4 ("When addressing this very same involuntariness claim on direct appeal, our supreme court observed: 'There is nothing in the record to support [Mr.] Walsh's claim that his consent to the search of his apartment was involuntary.' That's still true. A defendant cannot demonstrate prejudice by defense counsel's failure to file a motion to suppress if that motion were likely to fail even if it were filed." (quoting *Walsh v. State*, 2016 WL 3751911, at *2 (Del. June 29, 2016)) (alteration in original)).

[12] *See Bratcher v. State*, 2008 WL 2475741 (Del. June 20, 2008) (rejecting ineffective assistance of counsel claim based on failure to file suppression motion because "the record reflects that any such motion was likely to fail").

7

misconduct during his opening statement when he said, "The defendant, with the badge on, actually introduces himself as a detective and he gives him the badge that says Concealed Weapons Permit." We find no abuse of discretion in the Superior Court's conclusions that the prosecutor did not make any improper statements to which counsel unreasonably failed to object and that there was no prejudice. The prosecutor's statement during his closing statement was consistent with the testimony provided by the witness from the gun shop.[13] Walsh does not explain the nature of his complaint about the prosecutor's comment during his opening statement, and we find no basis to overturn the Superior Court's determination that the prosecutor's summary of the evidence that he expected to present did not warrant an objection.[14]

(15) Walsh also asserts that his trial counsel was ineffective because he did not object to the presentation of evidence of Walsh's prior burglary conviction in order to establish that Walsh was a person prohibited from possessing a firearm. The record reflects that trial counsel and the State had negotiated a stipulation that Walsh was a person prohibited. Trial counsel advised Walsh that it was in his interest to

---

[13] *See* Trial Tr. at 84 (Q: "When you heard the ratcheting—what you thought was a ratcheting sound, you did not see the gun at the same time as the sound?" A: "No, the firearm had went down. However, the ratcheting sound of that metal on a slide with springs is pretty distinctive. On most firearms, you can hear that, sir.").

[14] *Cf. Harris v. State*, 2014 WL 3888254 (Del. Aug. 7, 2014) (finding no plain error where prosecutor told the jury during opening statement that they would hear from a witness whose child found a gun in their yard but then prosecutor did not call that witness).

stipulate that he was a person prohibited in order to avoid the presentation to the jury of the evidence of Walsh's prior conviction, but Walsh rejected the stipulation, so the parties and the Court determined that a redacted version of the record reflecting the conviction would be presented at trial.[15] The Court engaged in a colloquy with him to ensure that he understood that the failure to stipulate meant that, instead of just being told that Walsh was a person prohibited, the jury would see what the nature of his prior conviction was, and that he had had an opportunity to discuss the matter with his trial counsel and wanted to proceed.[16] The Superior Court correctly concluded that counsel was not ineffective under these circumstances.

(16) Walsh's final claim of ineffective assistance by his trial counsel is that counsel failed to present a mistake of law defense. He does not articulate what the mistake of law defense would have been or suggest how it would have changed the outcome of his trial, nor did he make those arguments to the Superior Court.[17] He therefore has not overcome the strong presumption of reasonable representation or

---

[15] Trial Tr. at 4-6 (May 12, 2015).

[16] *Id.* at 7-8.

[17] *See Walsh*, 2018 WL 4638010, at *5 ("Mr. Walsh's final complaint against Trial Counsel is bare bones: 'Counsel was also ineffective when he never presented a mistake of law defense on behalf of the defendant.' That's it. With no specifics offered as to how the mistake of law defense now suggested would have changed the outcome of his trial, Mr. Walsh cannot succeed on a claim of ineffective assistance of counsel." (footnotes omitted)).

9

made concreate allegations of actual prejudice sufficient to substantiate a claim of ineffective assistance of counsel.[18]

(17) Walsh also contends that his postconviction counsel provided ineffective assistance because he did not pursue most of the claims that Walsh wanted him to pursue—namely, the claims that Walsh ultimately presented to the Superior Court after he discharged his postconviction counsel and then in this appeal. The record reflects that postconviction counsel investigated and evaluated Walsh's claims and decided, in his professional judgment, to present the claim that he deemed to have some merit. Walsh has not shown that postconviction counsel's assessment was objectively unreasonable.[19] And, as the Superior Court correctly determined, Walsh cannot show that he was prejudiced by postconviction counsel's decision, because Walsh has now presented each of the desired claims to the Superior Court and this Court, and each has failed.[20]

(18) Finally, Walsh asserts, without any factual support, that the Superior Court judge was racially biased and viewed the defendant as someone "who he should punish because I am black." In the absence of plain error on the record, we

---

[18] *Younger*, 580 A.2d at 556.

[19] *Harris*, 2018 WL 3239905, at *2.

[20] *See Watson v. State*, 2009 WL 2006883 (Del. July 13, 2009) (appellant could not show prejudice from alleged errors of postconviction counsel because "there is no evidence that Watson's claim would have succeeded had his counsel made the argument he originally asserted in his *pro se* motion").

reject Walsh's conclusory assertion of racial bias on the part of the Superior Court judge who presided over Walsh's jury trial and decided his postconviction motion.[21] Indeed, the record makes clear that the judge imposed the minimum sentence that the Delaware Code permitted him to impose.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[21] *Jackson v. State*, 2012 WL 4471140 (Del. Sept. 27, 2012).