**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| | ) |
| v. | )     **ID No. 1711001192** |
| | )     **Cr. A. Nos. IN17-11-0549, etc.** |
| CHRISTOPHER M. GREGG, | ) |
| | ) |
| Defendant. | ) |

Submitted: March 17, 2021
Decided: June 23, 2021

## ORDER DENYING MOTION FOR POSTCONVICTION RELIEF AND RELATED MOTIONS FOR DISCOVERY AND AN EVIDENTIARY HEARING

Upon consideration of the Defendant Christopher Gregg's Motions for Postconviction Relief (D.I. 76, 89), Discovery (D.I. 90), and an Evidentiary Hearing (D.I. 93), his trial counsel's affidavit (D.I. 87), the State's responses (D.I. 91, 92, 95), and the record in this matter, it appears to the Court that:

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. THE NOVEMBER 2017 FIRE AT THE HISTORIC VANDYKE-HEATH HOUSE

(1) In November 2017, Mr. Gregg was renting a property at 384 Vandyke Greenspring Road, Townsend, Delaware with his two daughters, "L.G". and "D.G.," and his then-fiancée, Debbie Mauthe.[1] The property, with a home and a barn, was

---

[1] *Gregg v. State*, 2019 WL 6048089, at *1 (Del. Nov. 14, 2019); Mr. Gregg and Ms. Mauthe were no longer engaged when he stood trial. Trial Tr., Dec. 4, 2018, at 71, 99 (D.I. 65).

owned by Charles Workman and had been rented by Mr. Gregg for the previous two years.[2]

(2) At around 8:30 a.m. on November 2, 2017, firefighters responded to a call regarding a fire at this property.[3] When firefighters, and subsequently fire deputies, arrived at the scene they saw two separate conflagrations; one engulfed the residence and the other raged in a separate structure on the property, a barn that was some distance away.[4] Once the firefighters had put out the two fires, the fire marshal deputies commenced their investigation.[5]

(3) When investigating the cause of the fires, fire deputies discovered that Mr. Gregg and D.G. had been arguing that morning resulting in Mr. Gregg ransacking D.G.'s room.[6]

---

[2] Trial Tr., Dec. 5, 2018, at 9-11 (D.I. 66).

[3] Trial Tr., Dec. 3, 2018, at 96 (D.I. 64); *Gregg*, 2019 WL 6048089, at *1 (noting that the caller also "saw personal items scattered on the roof and backyard").

[4] Trial Tr., Dec. 3, 2018, at 96.

[5] *Gregg*, 2019 WL 6048089, at *1.

[6] *Id.*

### B. MR. GREGG'S ARREST AND INDICTMENT

(4)    Mr. Gregg returned to the scene of the fires later that morning[7] and deputies placed him under arrest.[8]    A month later, a grand jury indicted Mr. Gregg on two counts of arson in the second degree and one count of arson in the third degree.[9]  Cathy A. Johnson, Esquire, served as Mr. Gregg's counsel through his trial proceedings.[10]

### C. MR. GREGG'S ARSON TRIALS

(5)    Via pre-trial application, the State moved under Delaware Rule of Evidence 404(b) to admit evidence of the circumstances surrounding a 2009 incident that resulted in Mr. Gregg's arrest for arson and eventual guilty plea to a lesser-included offense of reckless burning.[11]  The Court engaged the required *Getz*[12] analysis to determine whether that prior misconduct evidence was admissible.[13]  And after weighing the relevant factors, the Court concluded that evidence surrounding

---

[7]    *Id.*

[8]    *Id.*

[9]    *Id.*

[10]    Johnson Aff. at 1, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. July 9, 2020) (D.I. 87).

[11]    State's Mot. to Admit Relevant Evid., *State v. Christopher Gregg*, I.D. No. 1711001192 (Del. Super. Ct. May 22, 2018) (D.I. 22).  *See also Gregg*, 2019 WL 6048089, at *1.

[12]    *Getz v. State*, 538 A.2d 726 (Del. 1988).

[13]    *Gregg*, 2019 WL 6048089, at *2.

Mr. Gregg's prior reckless burning conviction could be introduced with a proper limiting instruction.[14]

(6)     Mr. Gregg's first trial ended in a mistrial when the jury could not reach a unanimous verdict.[15]

(7)     His second trial commenced on December 3, 2018.[16]

(8)     During their investigation, investigators were able to rule out potential accidental causes of the two fires, such as an electrical fire.[17]  Fire Deputy James Hedrick testified that his investigation revealed that the fires had been intentionally set by use of an accelerant and incendiary device.[18]  Among other factors supporting his finding the fires were deliberately set, Deputy Hedrick noted the absence of any appreciable wind at the time made it improbable that one fire could jump to another structure.[19]  Too, Fire Marshal John Nelson, who investigated the fire with his K-9

---

[14]   *Id.* at *2-3 (subsequently upholding the Court's Rule 404(b) ruling).

[15]   *Gregg*, 2019 WL 6048089, at *1.

[16]   *Id.*

[17]   Trial Tr., Dec. 3, 2018, at 115 ("There's no accidental causes in this structure that would lead me to believe any accidental cause could have occurred."), 123-24 ("Had it have been a windy day, would have made that much more difficult. Had they had been closer together would have made that much more difficult. That's not the case. . . So, yes we eliminated it").

[18]   *Id*. at 111, 117, 124.

[19]   Deputy Hedrick testified that it was unusual for two structures 30 feet apart to both be on fire, with no wind, and no electricity in the barn. *Id.* at 124.

Officer Zorro, testified that he had also concluded the fires were deliberately set.[20]

(9)    At trial, L.G. testified that when she woke up around 6:45 a.m. on the morning of the fire, she heard Mr. Gregg and D.G. arguing.[21]  Later that morning, before L.G. left for school, she took a picture of D.G.'s room; that picture showed D.G.'s room ransacked after D.G. and Mr. Gregg's argument.[22]  D.G. had left the residence at around 6:45 a.m.;[23] L.G. left between 7:05 a.m. and 7:10 a.m.[24]

(10)    Debbie Mauthe, Mr. Gregg's then fiancé, testified that she had driven Mr. Gregg to his uncle's farm that same morning, and that the two were supposed to leave the residence at 7:15 a.m. but ended up leaving "a few minutes[]" later.[25]

## D.  THE JUSTICES

(11)    During the first trial, D.G. testified that sometime prior to the 2017 fires another family resided on the property with Mr. Gregg and his daughters.[26]

---

[20]    *Id.* at 61-71 (discussing investigation conducted with Zorro), 107 (findings of investigation indicated use of an accelerant), 110-11, 117 ("So my final hypothesis and determination was that this was an incendiary fire, which means it was intentionally ignited . . .").

[21]    Trial Tr., Dec. 4, 2018, at 15.

[22]    *Id.* at 18-19; *see also Id.* at 47-48.

[23]    *Id.* at 58.

[24]    *Id.* at 28.

[25]    *Id.* at 81.

[26]    Trial Tr., Aug. 16, 2018, at 92-93 (D.I. 47).

Additionally, D.G testified to an animosity between Mr. Gregg and this family following their departure from the residence.[27] The family referenced by D.G. consisted of Scott and Gwendolyn Justice, and their two children.[28]

(12) During the first trial, Mr. Workman, owner of the property and friend of Mr. Gregg, testified that another person may have had a renter's insurance policy on the property at the time of the 2017 fires.[29]

(13) During the first trial, neither the State nor the defense included the Justices on a witness list.[30] But during the State's case-in-chief in the first trial, following the defense's cross-examination of D.G. and Mr. Workman, the State asked the Court to add Scott and Gwendolyn Justice to its witness list and confirm there were no conflicts with the jury.[31] The proceedings continued, but the Justices were never called to testify in the first trial.[32]

(14) The State included Scott and Gwendolyn Justice on its witness list for

---

[27] *Id.*

[28] Trial Tr., Dec. 4, 2018, at 61-62; *see also* Trial Tr., Aug. 16, 2018, at 189.

[29] *Id.* at 183.

[30] *Id.* at 94-95 (State explaining it "did not intend to use [Mr. and Mrs. Justice] as witnesses because they would mostly be character evidence.").

[31] *Id.* at 189.

[32] State's Resp. to Def.'s Mots. for Postconviction Relief and Disc. at 14, *State v. Christopher Gregg*, I.D. No. 1711001192 (Del. Super. Ct. Oct. 26, 2020) (D.I. 91) (hereinafter "State's Resp.").

the second trial.[33] Although the testimony of D.G., Mr. Workman, and Ms. Mauthe mentioned the Justices, neither the State nor the defense called them to testify during the second trial.[34] Testimony from multiple witnesses in the second trial, again, referenced ill will between Mr. Gregg and the Justices.[35] Additionally, Mr. Workman testified that the Justices still had personal items left in the barn.[36]

(15)  Mr. Gregg alleges that the Justices had insurance on the property at the time of the fires.[37] Though not introduced at trial, an email from Ms. Johnson, defendant's counsel, to the prosecutor reported that Mr. Gregg possessed a document referencing an insurance claim made by Gwendolyn Justice regarding lost property in the 2017 Fires.[38]

---

[33]  App. to State's Resp. to Def.'s Mots. for Postconviction Relief and Disc. at B38 (State's Witness List), *State v. Christopher Gregg*, I.D. No. 1711001192  (Del. Super. Ct. Oct. 26, 2020) (D.I. 92) (hereinafter "State's App.").

[34]  Trial Tr., Dec. 04, 2018, at 61-64, 99-102; Trial Tr., Dec. 05, 2018, at 19-22.

[35]  Trial Tr., Dec. 04, 2018, at 63-64; Trial Tr., Dec. 05, 2018, at 19-20.

[36]  *Id.* at 20.

[37]  Def.'s Mot. for Postconviction Relief at 3, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Feb. 13, 2020) (D.I. 76) (hereinafter "Def.'s Rule 61 Mot.").

[38]  State's App. at B39; *see also* Def.'s Rule 61 Mot., Ex. 1 (State Farm Insurance Letter).

## E. THE VERDICT AND POST-TRIAL

(15)   After a three-day trial, a jury convicted Mr. Gregg of the two counts of second-degree arson and one count of third-degree arson.[39]

(16)   He was sentenced in March 2019 to, *inter alia*, 18 years of imprisonment suspended after serving four years for diminishing levels of conditioned supervision.[40]

(17)   Mr. Gregg filed a direct appeal to the Delaware Supreme Court. His convictions and sentence were affirmed.[41]

(18)   Mr. Gregg subsequently filed this *pro se* Motion for Postconviction Relief under Superior Court Criminal Rule 61.[42] Mr. Gregg also filed a Motion for Discovery, and a Motion for an Evidentiary Hearing, or in the alternative Discovery.[43]

---

[39]   Verdict Sheet, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Dec. 6, 2018) (D.I. 58, 59).

[40]   Sentencing Order, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. March 21, 2019) (D.I. 62).

[41]   *Gregg*, 2019 WL 6048089, at *1.

[42]   Def.'s Rule 61 Mot. at 1. Gregg also filed a motion for appointment of postconviction counsel that was denied. (D.I. 77, 80).

[43]   Mot. for Text Message Conversation, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Aug. 30, 2020) (D.I. 90); Mot. for Evidentiary Hr'g, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Nov. 10, 2020) (D.I. 93).

## II. MR. GREGG'S POSTCONVICTION CLAIMS

(20)   Mr. Gregg brings various claims for relief in his Rule 61 motion and its amendments.  The best way to succinctly organize these claims is by the subject matter each relates to, and then discuss the grounds for relief under each.

### A. NO TRIAL TESTIMONY FROM THE JUSTICES

(21)   Mr. Gregg asserts the following allegations aimed at the State for its inclusion of Scott and Gwendolyn Justice on its witness list:

(a)   prosecutorial misconduct, denial of right to confront accuser, and a *Brady* violation;

(b)   violation of Sixth Amendment Right to Fair Trial; and

(c)   violation of Fourteenth Amendment Right to Due Process.[44]

(22)   Against his trial counsel, Mr. Gregg asserts an ineffective assistance of counsel claim for "fail[ing] to call or question certain witnesses regarding insurance claims they made relating to the November 2nd fires."[45]

### B. PHOTOGRAPH OF CONTENTS OF CONEX CONTAINER

(23)   Mr. Gregg says the Court erred by failing to suppress a photograph "due to the fact that the photo was taken 11 days after the incident."[46]  The photograph

---

[44]   Def.'s Rule 61 Mot. at 3; Def.'s Am. Mot. for Postconviction Relief, *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Jul. 27, 2020) (D.I. 89) (hereinafter "Def.'s Am. Rule 61 Mot.).

[45]   Johnson Aff. at 1.

[46]   Def.'s Rule 61 Mot. at 3.

shows the contents of a Conex container located at the site of the November 2nd fires.[47] The Fire Marshals had recovered an empty blue can that had previously held kerosene at the site. And, at trial, witnesses testified that Mr. Gregg normally kept such a can, holding either gas or kerosene, in this Conex container.[48] The photograph taken of the contents of the Conex container showed that there was no kerosene or gas can inside—the obvious inference being that the contents of the can normally in that Conex container may have been the accelerant for the fires.[49]

(24) Against his trial counsel, Mr. Gregg again asserts ineffective assistance of counsel. This time alleging—in reference to the photograph of the contents of the Conex container located on the property—that his "[c]ounsel failed to have a certain photograph excluded."[50]

## C. RULE 404 EVIDENCE OF PRIOR BAD ACT—THE 2009 RECKLESS BURNING

(25) Mr. Gregg insists the Court erred by admitting evidence related to his prior conviction for reckless burning.[51]

---

[47] *Id.*; Trial Tr., Dec. 4, 2018, at 71-72.

[48] Trial Tr., Dec. 3, 2018, at 120-21; Trial Tr., Dec. 4, 2018, at 141-43, 60-61, 71-72.

[49] Trial Tr., Dec. 5, 2018, at 26.

[50] Def.'s Rule 61 Mot. at 2.

[51] *Id.*

(26) He again couches this also as an ineffective assistance of counsel complaint, alleging that his trial "[c]ounsel improperly allowed certain bad acts to be admitted."[52]

## D. MR. GREGG'S CHOICE NOT TO TESTIFY

(27) Against the Court, Mr. Gregg asserts that he was denied his right to testify and right to a fair trial.[53]

(28) Against his trial counsel, he asserts ineffective assistance of counsel, alleging that his "[c]ounsel misadvised [Mr. Gregg] regarding his right to testify."[54]

## E. REQUESTS FOR DISCOVERY AND AN EVIDENTIARY HEARING

(29) To forward his postconviction claims, Mr. Gregg seeks: (a) discovery concerning text messages he says passed between him and his trial counsel;[55] and (b) an evidentiary hearing concerning the testimony of Gwendolyn and Scott Justice (or, in the alternative, the discovery of the State's interview of Gwendolyn and Scott Justice.)[56]

---

[52] *Id.*

[53] *Id*.

[54] *Id.*

[55] Mot. for Text Message Conversation at 1-2.

[56] Mot. for Evidentiary Hr'g at 1.

## III. RULE 61's PROCEDURAL BARS

(30)   Before the Court can consider the substance of any postconviction claims, it must first address Criminal Rule 61's procedural requirements.[57] The procedural bars of Rule 61 are "timeliness, repetitiveness, procedural default, and former adjudication."[58]

(31)   Here, Mr. Gregg's Motion was filed on February 10, 2020, less than one year after his conviction judgment was finalized, and thus is timely.[59]  This is Mr. Gregg's first Motion for Postconviction Relief and is thus not repetitive.[60] But the procedural default and former adjudication hurdles must and will be discussed further below.

### A. PREVIOUS ADJUDICATION OF RULE 404(b) CLAIM

(32)   Under Rule 61(i)(4): "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[61]

---

[57]   *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[58]   *State v. Stanford*, 2017 WL 2484588, at *2 (Del. Super. Ct. Jun. 7, 2017).

[59]   Def.'s Rule 61 Mot. at 1. The Delaware Supreme Court announced its decision on November 14, 2019. *Gregg*, 2019 WL 6048089, at *1.

[60]   Def.'s Rule 61 Mot. at 2.

[61]   Super. Ct. Crim. R. 61(i)(4); *see also Floyd v. State*, 1995 WL 622408, at *2 (Del. 1995).

(33) Here, Mr. Gregg directly appealed this Court's decision to admit evidence of his prior reckless burning conviction to the Delaware Supreme Court.[62] Our high Court affirmed the Court's decision to admit the evidence under Delaware Evidence Rule 404(b).[63] So, the current substantive claim complaining again of the admission of the Rule 404(b) evidence at trial is procedurally barred.

## B. SEVERAL GROUNDS FOR RELIEF NOT PREVIOUSLY ASSERTED

(34) Under Rule 61(i)(3): "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows: (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights."[64]

(35) To show cause, a movant must "allege more than the fact that a claim was not raised earlier in the process."[65] Rather, the movant "must show that some external impediment prohibited raising the claim."[66] And to demonstrate actionable prejudice, the movant must show "that there was a substantial likelihood that, had

---

[62] *Gregg*, 2019 WL 6048089, at *1.

[63] *Id.* at *3.

[64] Super. Ct. Crim. R. 61(i)(3).

[65] *State v. Stelljes*, 2018 WL 6264707, *3 (Del. Super. Ct. Nov. 28, 2018) (citing *State v. Wescott*, 2014 WL 7740466, at *1 (Del. Super. Ct. Nov. 24, 2014)).

[66] *Id.* (citing *Younger v. State*, 580 A.2d 52, 556 (Del. 1990)) (internal quotation marks omitted).

the claim been raised, the outcome of the case would have been different."[67]

(36) The claims Mr. Gregg now levels at the State (Prosecutorial Misconduct and Right to Confront Accuser; *Brady* violation; Right to Fair Trial; Right to Due Process) and against the Court (Failing to Suppress Photograph; Right to Testify), were not raised in any prior trial or appellate proceeding and thus are barred unless he can show cause and prejudice.

(37) Under Rule 61(i)(5), 61(i)(3)'s bar to relief cannot be applied to a claim that the court lacked jurisdiction or to any claim that either:

> (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; *or*

> (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[68]

(38) Mr. Gregg's several conclusory constitutional claims meet none of these 61(i)(5) requirements. In turn, those claims (Right to a Fair Trial and Right to Due Process) can only survive procedurally if they satisfy Rule 61(i)(3)'s two-part analysis. Their examination thereunder will be discussed below.

---

[67]  *Id.* (citing *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990)) (internal quotation marks omitted).

[68]  Super. Ct. Crim. R. 61(i)(5) (incorporating the pleading requirements of Rule 61(d)(2)).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

(39)  As Mr. Gregg posits four ineffective assistance of counsel claims—claims that generally cannot be raised on direct appeal—he is neither procedurally barred from raising them now in his collateral proceeding, nor can their substance be deemed formerly adjudicated.[69]  So the Court will address those claims here.

## IV.  APPLICABLE LEGAL STANDARDS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

(40)  An inmate who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[70]

(41)  There is a strong presumption that counsel's representation was reasonable,[71] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[72]  Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the

---

[69]  *Stanford*, 2017 WL 2484588, at *3.

[70]  *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[71]  *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[72]  *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

proceedings, rather than mere allegations of ineffectiveness."[73]  And an inmate must satisfy the proof requirements of both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either will doom the claim, and the Court then need not address the other.[74]

### B.  POSTCONVICTION DISCOVERY

(42)   Discovery in a Rule 61 proceeding is generally not available but is confined to "particularized discovery [if] good cause [is] shown."[75]  Good cause is found only in those situations where the movant can show a "compelling reason" for discovery to be granted.[76]

### C. POSTCONVICTION EVIDENTIARY HEARING

(43)   "It is well-settled that th[is] Court is not required to conduct an evidentiary hearing upon a Rule 61 motion if, on the face of the motion, it appears

---

[73]  *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *see also Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[74]  *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two- pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[75]  *Dawson*, 673 A.2d at 1197 (internal quotation marks and citations omitted).

[76]  *Id.* at 1198.

that the petitioner is not entitled to relief."[77]  "If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates."[78]  In short, "[u]nder Rule 61, the Superior Court has broad discretion when determining whether an evidentiary hearing is necessary."[79]

## V.  DISCUSSION

### A.  FAILURE TO PRESENT THE JUSTICES AS WITNESSES

#### 1. The State committed no prosecutorial misconduct or *Brady* violation. Nor was Mr. Gregg denied any right to confront his accuser.[80]

(44)  Mr. Gregg first claims the prosecution committed misconduct by placing Scott and Gwendolyn Justice on its witness list, and thus allegedly prohibiting him from confronting them.[81]  As this is a claim "that was not asserted in the proceeding leading to the judgment" it is barred unless Mr. Gregg can show both cause for relief from this procedural default and prejudice from a true violation of his rights.[82]

---

[77]  *State v. Winn*, 2014 WL 5025792, *4 (Del. Super. Ct. Oct. 2, 2014) (quoting *Hawkins v. State*, 2003 WL 22957025, at *1 (Del. 2003)).

[78]  *Id.* (quoting Super Ct. Crim. R. 61(h)(3)).

[79]  *Winn v. State*, 2015 WL 1469116, at *2 (Del. 2015).

[80]  Def.'s Rule 61 Mot. at 3.

[81]  *Id.*

[82]  Super. Ct. Crim. R. 61(i)(3).

-17-

(45) Put simply, there is no rule governing the witness list disclosed to the jury. As a matter of practice in criminal cases in this Court, each party includes any witness it believes it may call so as to ferret out any potential conflict a juror may have with any potential witness. There is neither a promise to call those identified, nor an enforceable requirement that they ever be called by either side. And, in practice, once the State has rested, the defense is able to call any witness it wishes— including any the State may have first identified as a potential witness. So Mr. Gregg has not identified anything that barred examination of the Justices at trial. The simple fact is that they were on the State's witness list, the State decided not to call them—a daily occurrence in the minute-by-minute dynamics of any trial—and nothing prohibited Mr. Gregg from calling them as his own witnesses.

(46) Accordingly, for want of prejudice alone, Mr. Gregg cannot satisfy Rule 61(i)(3), and his "prosecutorial misconduct" claim based on the State's failure to call the Justices is procedurally barred.

(47) Mr. Gregg in his amended count also asserts a "*Brady*" claim alleging the State withheld its interview with Scott and Gwendolyn Justice.[83] In this interview, Mr. Gregg asserts the Justices were questioned about the arson and the insurance policy and, therefore, there must be some exculpatory evidence.[84]

---

[83] Def.'s Am. Rule 61 Mot. at 2.

[84] *Id.* at 2, 4.

And Mr. Gregg continues here in his misguided belief that because the Justices were listed as State's witnesses, they were unable to be called by the defense. Thus, Mr. Gregg's *Brady* claim is that the Justices and their testimony were the evidence allegedly hidden. And as Mr. Gregg posits their testimony (and/or the State's interview of them) *must* be "materially favorable" to him, the State's conduct *must* be deemed a *Brady* violation.[85]

(48) Again, to require the Court to even approach the substance of this claim, Mr. Gregg must show cause *and* prejudice.[86] To show cause, he must "allege more than the fact that a claim was not raised earlier in the process."[87] He "must show that some external impediment prohibited raising the claim" prior to postconviction.[88]

(49) According to Mr. Gregg the "external impediment" was the State's withholding the Justices by its placing them on the witness list. Not so.

(50) *First*, as just explained, Mr. Gregg's counsel could have called the Justices to testify. So, if Mr. Gregg has any potential claim concerning the Justices and their failure to testify it can't be against the State, it must be against his trial

---

[85] *Id.*

[86] Super. Ct. Crim. R. 61(i)(3).

[87] *Stelljes*, 2018 WL 6264707, at *3 (citing *Wescott*, 2014 WL 7740466, at *1).

[88] *Id.* (citing *Younger*, 580 A.2d at 556 (internal quotation marks omitted)).

counsel.[89]  *Second*, the record—as evidenced in Mr. Gregg's own exhibits— demonstrates that he knew about the Justices' insurance policy and could have called either as a witness to discuss it.[90]  Consequently, Mr. Gregg can hardly claim there was some external impediment to earlier litigation of this claim.

(51)  And as to prejudice, Mr. Gregg's mere incantation of "*Brady*" is unavailing—he has identified neither material that could convincingly be considered "*Brady* material" nor any act by the State that could be deemed a "*Brady* violation."[91]

(52)  Accordingly, as Mr. Gregg cannot show the State (or anything else) impeded his ability to bring this claim or that he was prejudiced by anything the State did or did not do with the Justices, his claim is procedurally barred.

### 2.  No recognizable violation of a constitutional fair trial right.[92]

(53)  Mr. Gregg says baldly that he was denied his right to a fair trial.[93]  As Mr. Gregg did not assert this constitutional claim in the proceeding leading to the

---

[89]  And Mr. Gregg's first claim of ineffective assistance of trial counsel is that trial counsel failed to call the Justices.  *See* Johnson Aff. at 2.

[90]  Def.'s Rule 61 Mot., Ex. 1.

[91]  *See Michael v. State*, 529 A.2d 752, 755 (Del. 1987) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)) (defining *Brady* material as "evidence favorable to the defendant and material either to guilt or punishment"); *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (describing the three components of a *Brady* violation: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant").

[92]  Def.'s Rule 61 Mot. at 3.

[93]  *Id.*

Court's final judgment, it too is barred unless he can show cause and prejudice.[94]

(54) But he fails to further elaborate on this specific claim in any meaningful way in his Motion, his Amended Motion, or any of his prolix supplemental responses and motions.[95] With that failure, his conclusory fair trial claim must be deemed procedurally barred.

### 3. No demonstrated violation of any constitutional due process right.[96]

(55) Mr. Gregg asserts that his due process rights were violated.[97] But again, Mr. Gregg does not elaborate on this assertion in any of his papers.[98] A mere callout of a supposed wrong and blithely attaching a "constitutional violation" label thereto in prolix postconviction papers falls woefully short of satisfying either the cause or the prejudice requirements of Rule 61(i)(3).

---

[94] Super. Ct. Crim. R. 61(i)(3).

[95] *See*, *e.g.*, Def.'s Rule 61 Mot. (D.I. 76); Def.'s Am. Rule 61 Mot. (D.I. 89); Def.'s Supp. Resp., *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Dec. 30, 2020) (D.I. 97); Def.'s Supp. Ltr., *State v. Christopher Gregg*, ID No. 1711001192 (Del. Super. Ct. Mar. 4, 2021) (D.I. 98).

[96] Def.'s Am. Rule 61 Mot. at 5.

[97] *Id.* at 4-5 ("The State Prosecutor preventing the defense counsel knowledge of this Insurance Policy and access to the holder Gwen G. Justice for questioning is a blatant violation to defendants 6th Amendment right to a fair trial and 14th Amendment right to due process.").

[98] *See, e.g.*, Def.'s Rule 61 Mot. (D.I. 76); Def.'s Am. Rule 61 Mot. (D.I. 89); Def.'s Supp. Resp. (D.I. 97); Def.'s Supp. Ltr. (D.I. 98).

(56)  So again, this conclusory allegation of supposed due process error is procedurally barred.

### 4. Trial Counsel "failed to call or question certain witnesses regarding insurance claims they made relating to the November 2nd fires."[99]

(57)  Mr. Gregg's first claim for ineffective assistance of counsel is that trial "[c]ounsel was ineffective because she failed to call or question certain witnesses regarding insurance claims [] made relating to the November 2nd fires."[100] Specifically, Mr. Gregg asserts that trial counsel should have called Gwendolyn and Scott Justice to testify, and that trial counsel had told Mr. Gregg "that Scott and Gwen are state['s] witness[es] and are not allowed to be questioned until presented."[101] But, as his trial counsel explains in her affidavit "[t]he defendant did not want to call these witnesses once he learned that they would be questioned by the State about conversations they had with the defendant."[102] This, she and Mr. Gregg understood, could include "testimony regarding [Mr. Gregg's alleged] drug use, drinking and behavior witnessed by the [Justices] including [bonfire]s at his residence and reckless behavior."[103]

---

[99]  Johnson Aff. at 1.

[100]  *Id.*

[101]  Mot. for Text Message Conversation at 2.

[102]  Johnson Aff. at 1.

[103]  *Id.*

(58)  To reiterate, to succeed on any ineffectiveness claim, Mr. Gregg must satisfy both the deficient attorney performance and resulting prejudice prongs; failure on either is fatal.[104]

(59)  As trial counsel notes, it was a strategic decision to not call Gwendolyn and Scott Justice.[105]  That is because while the defense might have been able to present a  farfetched alternative theory on a person or persons with a motive— supposedly, the Justices due to the potential bad blood and for the insurance proceeds—their testimony brought with some devasting downside testimony regarding Mr. Gregg's  alcohol and/or drug use and other reckless behavior, all of which the State suggested might have helped fuel his actions on the morning of the fire.  While Mr. Gregg suggests otherwise, the record evidences that Ms. Johnson was aware of both the positives and negatives of presenting the Justices' testimony for both sides, had discussed them with Mr. Gregg, and made an informed choice that they would do more harm than good.

(60)  Her decision to not call the Justices was objectively reasonable.[106]

---

[104]  *Strickland*, 466 U.S. at 697; *Ploof*, 75 A.3d at 825 ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *Hamby*, 2005 WL 914462, at *2.

[105]  Johnson Aff. at 1.

[106]  *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable' . . .").

"When a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[107] And an attorney's informed decision as to what evidence to admit and whom to call is a tactical decision that deserves great weight and deference.[108] Indeed, "the United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced."[109] Mr. Gregg has thus failed to overcome the strong presumption that his counsel acted reasonably[110] and on that basis alone his ineffectiveness claim as to the Justices and their testimony must fail.[111]

---

[107] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).

[108] *See Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring) (noting that the defense attorney "has the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop"); *Clark v. State*, 2014 WL 5408410, at *4 (Del. Oct. 21, 2014) ("The trial court had no obligation to second-guess or contravene defense counsel's strategy and make sure that [defendant] agreed with his counsel's strategic choice. Indeed, it would not have been appropriate.").

[109] Phillips, Jean K. Gilles, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?*, 71–Oct. J. Kan. B.A. 28 (2002) (citing *Wainwright v. Sykes*, 433 U.S. at 93 n.1); *see also Strickland*, 466 U.S at 690-91.

[110] *Burns*, 76 A.3d at 788 ("Under *Strickland*, the strategic decisions made by counsel are entitled to a strong presumption of reasonableness.").

[111] *See State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011), *aff'd*, 2011 WL 3074790 (Del. July 25, 2011) ("To restate the requirements of *Strickland,* a defendant must establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different. If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).

**5. These Claims Warrant Neither Discovery nor an Evidentiary Hearing.**

(61) Mr. Gregg is requesting the Court order production of any mid-trial text messages between himself and his trial counsel in an attempt to demonstrate that she had misconstrued the status of Gwendolyn and Scott Justice as State's witnesses.[112] He says these could be used to show that Ms. Johnson provided ineffective assistance.[113]

(62) This Court does, of course, possess "inherent authority under Rule 61 in the exercise of its discretion to grant particularized discovery for good cause shown."[114] But, "[i]n postconviction proceedings, 'good cause' is a heavier burden than the showing needed for pretrial discovery."[115] Indeed, the Court should grant discovery yet again during postconviction proceedings only when there is a "compelling reason" to do so.[116]

(63) Again, even were Mr. Gregg to demonstrate inadequate performance in Ms. Johnson's assessment of whether the Justices were available to be defense

---

[112] Mot. for Text Message Conversation at 1-2.

[113] *Id.* at 2.

[114] *Dawson v. State*, 673 A.2d 1186, 1197 (Del. 1996).

[115] *Cabrera v. State*, 173 A.3d 1012, 1033 (Del. 2017).

[116] *Dawson*, 673 A.2d at 1198 (Sought-after materials were not discoverable under the postconviction discovery's good cause standard because movant "has shown no compelling reason for their discovery.").

witnesses—which certainly he has not done as yet—he could demonstrate no prejudice. The 'but for' showing required to prove prejudice is exacting: "but for counsel's unprofessional errors, the result of the proceeding would have been different."[117] As Ms. Johnson well-understood and explained, calling the Justices as defense witnesses would likely have allowed the State to introduce evidence of Mr. Gregg's "drug use, drinking and . . . reckless behavior" witnessed by them."[118] Thus, she quite reasonably concluded that calling them, as Mr. Gregg now urges, would have been of little value to the defense. And Mr. Gregg cannot show that the possible Justice testimony would have likely resulted in a different outcome at trial.[119] And so, there is no compelling reason to order the production of any such text messages some two and one-half years after trial during this postconviction proceeding. Mr. Gregg's discovery motion aimed at the text messages he suggests support this specific charge of inadequate attorney performance is, therefore, **DENIED.**

(64)   Mr. Gregg is also requesting an evidentiary hearing concerning the

---

[117] *Strickland*, 466 U.S. at 694; *Alston*, 2015 WL 5297709, at *3.

[118] Johnson Aff. at 1.

[119] *See Monroe*, 2015 WL 1407856, at *5-6 (Postconviction movant's mere acknowledgment that the complained-of omitted evidence "could have been extremely harmful or extremely beneficial" was insufficient because "*Strickland* requires more than mere possibility of prejudice; a petitioner in a Rule 61 motion alleging ineffective assistance of counsel 'must make specific allegations of actual prejudice and substantiate them.'").

testimony of Gwendolyn and Scott Justice, or in the alternative, the Discovery of the State's interview of Gwendolyn and Scott Justice.[120]

(65)   Under Rule 61, "[t]he Superior Court has discretion to determine whether to hold an evidentiary hearing."[121]  And where it is apparent on the face of a postconviction motion, the responses thereto, the record of prior proceedings, and any added materials that the petitioner is not entitled to relief, there is no need for an evidentiary hearing.[122]

(66)   After consideration of the complete evidentiary record and the legal issues raised, Mr. Gregg has failed to demonstrate even an arguable basis for his claimed entitlement to relief.[123]  For that reason, his request for an evidentiary hearing is **DENIED**.  And because "at this postconviction stage, [Mr. Gregg is] not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence," this specific request to seek further discovery is also **DENIED.**[124]

---

[120]  Mot. for Evidentiary Hr'g at 1.

[121]  *Johnson v. State*, 2015 WL 8528889, at *4 (Del. Dec. 10, 2015).

[122]  *Id.* at *4 (quoting *Hawkins*, 2003 WL 22957025, at *1).

[123]  *Shelton v. State*, 744 A.2d 465, 510 (Del. 2000).

[124]  *Cabrera*, 173 A.3d at 1033 (cleaned up).

## B. PHOTOGRAPH OF CONTENTS OF CONEX CONTAINER.[125]

(67) When contesting the propriety of the admission of the photograph of the contents of the Conex container located on the property, Mr. Gregg suggests error by both the Court and his counsel.

(68) In Mr. Gregg's claim against the Court, he says the photo of the contents of a Conex container that was introduced by the State should have been excluded (presumably *sua sponte*) because it was taken eleven days after the fire.[126] This is another claim "that was not asserted in the proceeding leading to the judgment" and is again barred unless Mr. Gregg can demonstrate cause and prejudice.[127]

(69) Put simply, there was no basis for exclusion of this crime scene photo depicting the void where a combustibles container usually sat. That it was not taken until well after the morning of the fire goes to its weight not its admissibility.[128] There is just no "substantial likelihood" the outcome of the case would be different,

---

[125] Def.'s Rule 61 Mot. at 3.

[126] *Id.*

[127] Super. Ct. Crim. R. 61(i)(3).

[128] *See*, *e.g.*, *Floudiotis v. State*, 726 A.2d 1196, 1208 (Del. 1999) (describing the relatively low relevance and authenticity thresholds for the admission of photographs meant to illustrate crime scenes); *see also Lobianco v. State*, 2006 WL 520015, at *2 (Del. Mar. 3, 2006) ("Once the photographs [taken of injuries several days after the alleged criminal assault] were admitted into evidence, the ultimate question of the weight to be given the photographs as well as matters of credibility were properly submitted to the jury.").

had the Court engaged some *sua sponte* admissibility analysis of this one photograph. And so, Gregg cannot demonstrate Rule 61(i)(3) prejudice.

(70) Mr. Gregg also casts the admission of the photo as another ineffective assistance of counsel claim. Referring again to the photograph of the "contents of a Conex container . . . taken 11 days after the incident," he complains that Ms. Johnson should have had it excluded.[129]

(71) In Mr. Gregg's view, because he informed counsel of his issue with the photograph and yet it was still admitted without her objection, trial counsel was ineffective.[130]

(72) As just explained, Ms. Johnson was correct in her assessment of the admissibility of that photograph.[131] Given that applicable law, there is no reasonable probability that the Court would have excluded the now-challenged photograph. Nor is there any reasonable probability that if Ms. Johnson could have somehow convinced the Court to do so that the result of Mr. Gregg's trial would have been different.[132] Because Mr. Gregg fails to carry his burden to show prejudice under

---

[129] Def.'s Rule 61 Mot. at 3.

[130] *Id.*

[131] Johnson Aff. at 2 ("All photographs taken at the scene of the fire were admissible under Delaware Rules of Evidence.").

[132] *McGlotten*, 2011 WL 987534, at *4.

*Strickland*, the Court need not reach the issue of whether trial counsel's failure to object to the introduction of the Conex container photo was deficient.[133]

(73)   Accordingly, both of Mr. Gregg's claims pertaining to the admission of the photograph of the contents of the Conex container fail.

## C. RULE 404 EVIDENCE OF PREVIOUS BAD ACT.[134]

(74)   Mr. Gregg previously appealed this Court's decision to admit evidence related to his 2009 reckless burning conviction to the Delaware Supreme Court and that decision was affirmed.[135]  So his direct claim now regarding the admission of this same evidence is procedurally barred under Rule 61(i)(4).[136]

(75)   But, again, Mr. Gregg complains of the admission of this evidence as yet another supposed instance of ineffective assistance of counsel because, in his view, admission of any evidence related to that 2009 reckless burning conviction was improper.[137]

---

[133]  *See Taylor v. State*, 32 A.3d 374, 386 (Del. 2011) (finding that where the defendant could not show resulting prejudice, his *Strickland* claims must fail).

[134]  Def.'s Rule 61 Mot. at 3.

[135]  *Gregg*, 2019 WL 6048089, at *1, *3.

[136]  Super. Ct. Crim. R. 61(i)(4).

[137]  Def.'s Rule 61 Mot. at 3.

(76) Ms. Johnson opposed the State's motion *in limine* to admit the 2009 reckless burning evidence; she was just unsuccessful in her attempt to exclude it.[138] And the Delaware Supreme Court on direct appeal affirmed the Court's decision to admit it.[139] Mr. Gregg, therefore, can demonstrate neither the deficient attorney performance nor the resulting prejudice required.

### D. MR. GREGG WAS NOT DENIED HIS RIGHT TO TESTIFY[140]

(77) Mr. Gregg suggests his right to testify was abridged by the Court and his trial counsel.[141] Again, as this is a claim "that was not asserted in the proceeding leading to the judgment" it is barred unless Mr. Gregg can show cause and prejudice.[142] He demonstrates neither.

(78) Before the defense closed its case, the Court engaged in a thorough colloquy with Mr. Gregg to ensure that he understood his right to testify or not in his own defense. During that discussion, Mr. Gregg confirmed that: (a) he understood that—unlike other trial strategy or tactical calls—the choice to testify was his alone; (b) he had a full opportunity to speak to Ms. Johnson about that choice;

---

[138] Johnson Aff. at 2; *see* State's App. at B24 (Evidentiary Argument).

[139] *Gregg*, 2019 WL 6048089, at *3.

[140] Def.'s Rule 61 Mot. at 3.

[141] *Id.*

[142] Super. Ct. Crim. R. 61(i)(3).

(c) he understood the jury instruction given if he chose not to testify; (d) he had no remaining questions before he made his final choice to waive testimony; and, (e) it was his own individual choice to not take the stand.[143] Mr. Gregg never wavered; he did not wish to testify.[144]

(79) Given this record, Mr. Gregg can demonstrate no prejudice that would permit this claim under Rule 61(i)(3), so again he suggests that it was ineffective assistance of counsel—which he could not previously raise—that led to this and therefore his claim is procedurally barred. Specifically, Mr. Gregg claims that his trial counsel misadvised him that testifying would cause a "delay of trial [that] would reflect on a longer sentence."[145]

(80) Ms. Johnson discussed with Mr. Gregg's right to testify with him on a number of occasions.[146] She went over the positives and negatives of testifying in his own defense. And, no doubt, with trial counsel, Mr. Gregg went back and forth on whether he should or should not testify in his own defense.[147] But, when asked by the Court at trial whether he had adequate time for such discussions with his

---

[143] Trial Tr., Dec. 5, 2018, at 172-75.

[144] *Id.*

[145] Def.'s Rule 61 Mot. at 3.

[146] Johnson Aff. at 2.

[147] *Id.*

lawyer and whether he had any remaining questions regarding his right and decision not to testify, Mr. Gregg confirmed he did have adequate time and that he had no further questions: "I understand completely."[148]

(81)   The facts here are similar to those in *Hawkins v. State* where the Delaware Supreme Court rejected an ineffective assistance of counsel claim based on the defendant's decision not to testify.[149]   There, the Court found "no indication in the transcript or record that [defendant's] decision not to testify was coerced by his counsel."[150]   Just so here.   The record here demonstrates neither coercion nor misadvice; it demonstrates that Mr. Gregg's decision was voluntary and conscious after weighing all his counsel adequately conveyed to him.[151]

(82)   And, if Mr. Gregg's failure to demonstrate any attorney inadequacy were not enough (which it is), he still must demonstrate prejudice—that is, he "must demonstrate more than a mere 'conceivable' chance of a different result."[152] This "objective inquiry is not mathematically precise" but allows "finding prejudice

---

[148]   Trial Tr., Dec. 5, 2018, at 175.

[149]   *Hawkins*, 2003 WL 22957025, at *1.

[150]   *Id.*

[151]   Trial Tr., Dec. 5, 2018, at 172-75; Johnson Aff. at 2-3.

[152]   *Baynum v. State*, 211 A.3d 1075, 1084 (Del. 2019) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

when there is a substantial likelihood—i.e., a meaningful chance—that the different outcome would have occurred but for counsel's deficient performance."[153]

(83) Mr. Gregg's unadorned post-trial prediction that testifying in his own defense would have changed the outcome is, at best, a suggestion of mere conceivability which cannot support a finding of the necessary prejudice.[154]

(84) In short, no matter how Mr. Gregg attempts to seek review of his choice not to testify, he falls well short of demonstrating some constitutional violation led to it.

## VI. CONCLUSION

(85) When it comes to those the claims that are not procedurally barred, Mr. Gregg has failed to demonstrate that any of his complaints of error leveled at the Court or at the State warrant Rule 61 relief. He has also failed in meeting his burden of demonstrating: that Ms. Johnson's representation fell below an objective standard of reasonableness; and that, but for her alleged errors, he would not have been convicted at trial. And for good reason—the record demonstrates that Ms. Johnson's preparation for and advocacy throughout Mr. Gregg's pre-trial, trial, and sentencing proceedings were anything but ineffective. Consequently, Mr. Gregg's Motions for

---

[153] *Id.*

[154] *Id.*

Postconviction Relief (D.I. 76, 89), Discovery (D.I. 90), and an Evidentiary Hearing

(D.I. 93), are all **DENIED.**

**SO ORDERED this 23rd day of June, 2021.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:    Matthew C. Bloom, Deputy Attorney General
        Cathy A. Johnson Esquire
        Mr. Christopher Gregg, *pro se*