**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,     )
                                 )

      v.                   )      ID No. 1812005541
                                 )

WALTER LOLLEY,         )
                                 )

     Defendant.      )

## ORDER DENYING POSTCONVICTION RELIEF

On August 7, 2022, Walter Lolley moved this Court for postconviction relief from his February 25, 2020 conviction for two counts of Murder in the Second Degree.[1] Defendant argues he is entitled to relief because, among other things, his trial defense counsel was ineffective and coerced him into entering a *Robinson* plea.[2] The State counters that Defendant's Motion is time-barred and meritless. While the Motion is not time-barred, after considering the parties' arguments, this Court concludes it lacks merit and must be DENIED.

## BACKGROUND

Defendant's conviction stems from the murders of Thessalonians Berry and Isabel Cooper in May 2018. In the early morning hours of May 24, 2018, police

---

[1] *See* Docket Item ("D.I.") 23. The facts in this decision reflect the record developed at the February 25, 2020 guilty plea colloquy. Citations to the Colloquy transcript are in the form "Tr. #."

[2] *Robinson v. State*, 291 A.2d 279, 281 (Del. 1972) (permitting the acceptance of a guilty plea in the absence of an admission of guilt).

1

located the lifeless bodies of Berry and Cooper in the front seat of a mangled vehicle near the intersection of Kiamensi Road and Rothwell Drive in New Castle County, Delaware.[3] Both had been shot from behind at close-range.[4] Substantial evidence, including witness testimony, video footage from a nearby gas station, and a blood-stained shirt marred with gun residue and found at the crime scene all pointed to one suspect—Walter Lolley ("Defendant").[5] But, by the time police arrived, Defendant had fled.

Law enforcement authorities caught up with Defendant months later in Georgia.[6] Although Defendant denied having a close relationship with the victims, living in Delaware during the relevant time frame, and his true whereabouts on the night of the murders,[7] substantial evidence confirmed otherwise. Tthe evidence showed Defendant and one of the murder victims, Berry, "were very good friends[,] spent almost every day together, talked every day either through text messages or on the phone, [and] were wearing matching outfits the day of the homicide that [D]efendant had apparently purchased for them[.]"[8] "[V]ideo surveillance and

---

[3] Tr. 8:13–19.

[4] Tr. 8:13–9:3.

[5] Tr. 9:1–7.

[6] Tr. 9:8–9.

[7] Tr. 9:8–12.

[8] Tr. 9:13–18.

evidence of [Defendant']s DNA and his clothing at the scene" all belied Defendant's denials.[9]

The State indicted Defendant on two counts of Murder First Degree, two counts of Possession of Firearm During the Commission of a Felony ("PFDCF"), and two counts of Possession of a Firearm by a Person Prohibited ("PFBPP").[10] After several months of negotiation, on February 25, 2020, Defendant entered a *Robinson* plea to two counts of Murder in the Second Degree.[11] The Court deferred sentencing.

Prior to sentencing, Defendant moved the Court *pro se* to withdraw his *Robinson* plea.[12] This Court denied Defendant's request based on the findings the judge who accepted the *Robinson* plea "engaged Defendant in a plea colloquy [during which] Defendant informed the judge he understood the terms of the plea, as stated on the plea paperwork[;] [found] Defendant's guilty plea was entered knowingly, intelligently, and voluntarily;" [and found] there was substantial factual

---

[9] Tr. 9:18–20.

[10] D.I. 2.

[11] D.I. 23; *see also Robinson v. State*, 291 A.2d 279, 281 (Del. 1972) (permitting the acceptance of a guilty plea in the absence of an admission of guilt).

[12] D.I. 27; D.I. 30 ("Defendant argue[d] that his attorney failed to file a motion to suppress and did not provide requested exculpatory and impeachment material. Defendant further contend[ed] that the terms of the plea he reviewed in the courtroom were different from what he previously had understood them to be.").

evidence presented during the plea hearing to support Defendant's guilt of the offenses to which he was pleading guilty.[13]

At the sentencing hearing, held July 23, 2021, this Court sentenced Defendant to a total of 50 years at Level V, followed by lesser levels of incarceration and probation.[14] Defendant did not take a direct appeal.

On August 7, 2022, Defendant moved this Court for postconviction relief ("Motion").[15] Defendant maintains his innocence and contends Timothy J. Weiler ("Trial Counsel") was ineffective in preparing his case and coerced him into entering the *Robinson* plea.[16] The Prothonotary returned Defendant's letter as a nonconforming document, so on November 22, 2022, he filed the instant "Motion," along with a motion for appointment of counsel.[17]

In September 2023, this Court appointed Patrick Collins, Esquire and Kimberly Price, Esquire to represent Defendant ("Postconviction Counsel").[18] On December 20, 2023, Trial Counsel filed an affidavit denying all of Defendant's claims.[19] Two days later, Postconviction Counsel moved to withdraw as counsel

---

[13] *See* D.I. 30.

[14] D.I. 30, 31.

[15] D.I. 32.

[16] *Id.*

[17] D.I. 33, 34.

[18] D.I. 36, 39.

[19] D.I. 44.

4

under Superior Court Criminal Rule 61(e)(7).[20] On January 22, 2024, Defendant responded to Postconviction Counsels' withdrawal motion, but failed to address Trial Counsels' averments.[21]

The State's Response, dated April 12, 2024, opposes the Defendant's request for postconviction relief on the bases the Motion is procedurally-barred because it was untimely filed and is otherwise meritless.[22]

## DISCUSSION

Delaware Superior Court Criminal Rule 61, *Postconviction remedy*, provides incarcerated individuals a chance to seek redress from a prior sentence of this Court by "setting aside a judgment of conviction" because this Court "lacked jurisdiction to enter the judgment or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction."[23]

Defendant seeks postconviction relief on six grounds: (1) Trial Counsel failed to provide him with full discovery; (2) Trial Counsel failed to file a motion to suppress; (3) Trial Counsel coerced him into entering the guilty plea; (4) Trial Counsel failed to assist him with his motion to withdraw the guilty plea; (5) the Plea

---

[20] *See* D.I. 46, 47.

[21] D.I. 48.

[22] D.I. 51. Due to the retirement of a judicial officer, this matter was reassigned to a new judge.

[23] Super. Ct. Crim. R. 61(a)(1).

Agreement was breached; and (6) Defendant is innocent.[24] The State argues that the Motion is time-barred and meritless.

This Court concludes Defendant's Motion is not time-barred and must be considered on the merits. After considering the merits, this Court finds Defendant failed to establish Trial Counsel's performance was objectively unreasonable, prejudice flowing therefrom, or any other basis for postconviction relief. Accordingly, the Court denies Defendant's Motion.

### A. Defendant's Motion is not Time-Barred.

Defendant's Motion was timely filed. This Court is required to consider procedural bars to postconviction relief before reaching the merits of such claims: (1) the motion must be filed within one year after the finality of a conviction or a retroactive right; (2) repetitive motions are generally prohibited; (3) issues not raised before conviction are deemed waived unless cause or prejudice is shown; and (4) claims already finally adjudicated on the merits are precluded.[25]

The State contends the Motion is time-barred because a year elapsed between Defendant's sentencing on July 23, 2021 and Defendant's August 7, 2022 Motion. This Court disagrees. If Defendant had taken an appeal, the State's calculation of the "finality" date would be correct; however, when a defendant "does not take a

---

[24] D.I. 32.

[25] *Id.* at (i)(1–4)

6

direct appeal within thirty days of the time of sentencing, the three-year period under Rule 6(i)(1) begins thirty days *after* sentencing."[26] Here, Defendant did not take a direct appeal, so the "finality" date began 30 days after sentencing—August 23, 2021. It follows that Defendant's August 7, 2022 Motion was timely filed. Because this is Defendant's first motion for postconviction relief and is timely, this Court now addresses the merits.

**B.** **Defendant Did Not Establish Ineffective Assistance of Counsel or Prejudice.**

Several of Defendant's grounds for postconviction relief hinge on the assertion his Trial Counsel was ineffective. To merit postconviction relief based upon a claim of ineffective assistance of counsel, a defendant "must demonstrate[:] (1) trial counsel's performance was objectively unreasonable[] and (2) if trial counsel was deficient, there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[27]

The "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

[26] *Jackson v. State*, 654 A.2d 829, 832–33 (Del. 1995) (citing *Tatem v. State*, 608 A.2d 730 (Del. 1992) (TABLE)) (emphasis added).

[27] *State v. Wharton*, 2024 WL 3813471, at *4 (Del. Super. Aug. 13, 2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

perspective at the time."[28] Delaware courts recognize "a strong presumption that counsel conducted himself in a professionally reasonable manner. Mere allegations of ineffectiveness are not enough."[29]

"In the context of a plea challenge, it is not sufficient for the defendant to simply claim . . . counsel was deficient;"[30] rather, the defendant "must make and substantiate concrete allegations to overcome this presumption."[31] Moreover, even when a colorable claim of ineffective assistance exists,"[t]he defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, *but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.*"[32] The "failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel."[33]

---

[28] 466 U.S. at 669.

[29] 2024 WL 3813471, at *4 (first citing *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); and then citing *Younger v. State*, 580 A.2d 552, 556 (Del. 1990)).

[30] *State v. Williams*, 2024 WL 4024979, at *4 (Del. Super. Aug. 30, 2024).

[31] 2024 WL 3813471, at *4 (first quoting 466 U.S. at 689; and then citing *Salih v. State*, 962 A.2d 257, 257 (Del. 2008) (TABLE)).

[32] *State v. Williams*, 2024 WL 4024979, at *4 (emphasis added) (citing *Strickland v. Washington*, 466 U.S. at 687–88; *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore*, 562 U.S. 115, 121–22 (2011)).

[33] *Hoskins v. State*, 102 A.3d 724, 730 (Del. Sept. 22, 2014) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996); *Richardson v. State*, 3 A.3d 233, 240 (Del. 2010)) (citations omitted).

Defendant alleges his Trial Counsel was ineffective because: (1) Trial Counsel failed to provide him with full discovery; (2) Trial Counsel failed to file a motion to suppress; (3) Trial Counsel coerced him into entering the guilty plea; and (4) Trial Counsel failed to assist him with his motion to withdraw the guilty plea. The Court concludes Defendant's claims do not establish his Trial Counsel's conduct was objectively unreasonable or any prejudice flowing therefrom.

First, Trial Counsel provided Defendant with relevant discovery to determine whether he should enter his *Robinson* plea. Citing *Urquhart v. State*,[34] Defendant claims he was prejudiced by not having the opportunity to appreciate all the evidence against him because Trial Counsel never provided him with pictures and video recordings, was shocked when Trial Counsel presented "new evidence of witness statements[,]" and never received documents showing that his cell phone was at the scene of the crime.[35] Defendant's reliance on *Urquhart* is misplaced. In *Urquhart*, the defendant was represented by multiple attorneys who never met with the defendant until the morning of trial.[36] Counsel was ineffective because he failed to engage in a meaningful review of *exculpatory* evidence with the defendant before

---

[34] 203 A.3d 719 (Del. 2019) (reversing Superior Court's denial of a postconviction relief claim).

[35] *See* D.I. 32.

[36] 203 A.3d at 725, 731–32.

9

trial[37] and the defendant was prejudiced because he did not have the opportunity to appreciate that evidence in evaluating whether to plead guilty.[38] Not so here.

Unlike counsel in *Urquhart*, here, Trial Counsel had discovery and advised Defendant a week before the plea colloquy regarding his evaluation of that evidence, including: (1) the "dead bank loser defense" of maintaining that Defendant was not present at the crime scene; (2) the likelihood that the ballistics report would show the victims were shot from behind; (3) the gunshot residue on Defendant's purported shirt at the crime scene; (4) the presumptions of Defendant's flight to Georgia and following contradictory statements to officers; (5) and the State's ability to introduce Defendant's criminal history into evidence.[39]

A defendant's statements during a plea colloquy are presumed to be truthful[40] and a "defendant's representations at the plea colloquy, as well as any findings made by the judge accepting the plea, constitute a 'formidable barrier in any subsequent collateral proceedings.'"[41] Here, during the entry of his *Robinson* plea, Defendant: signed a Truth-in-Sentencing Guilty Plea Form acknowledging he was satisfied with

---

[37] *Id.* at 730–31, 734.

[38] *Id.* at 727, 731.

[39] D.I. 44.

[40] *State v. Smith*, 2024 WL 1577183, at *6 (Del. Super. Apr. 11, 2024) (citing 703 A.2d at 632).

[41] *State v. Tingle*, 2024 WL 4201908, at *1 (Del. Super. Sept. 16, 2024) (citing *State v. Mendez*, 2003 WL 23095688, at *3 (Del. Super. Dec. 19, 2003)).

his counsel's representations;[42] did not contest the State's factual recitation supporting his guilty plea; [43] acknowledged he had reviewed the plea offer in detail and thoroughly discussed his case with Trial Counsel; and told the judge he was pleading guilty because he was in fact guilty.[44]

Second, Trial Counsel did not, as Defendant contends, fail to file a motion to suppress on his behalf.[45] Trial Counsel avers, after reviewing the discovery, he "was unable to find any suppression issues of merit."[46] Defendant's claim lacks specificity because fails to state with particularity what evidence he seeks to suppress.

Third, Defendant was not coerced into entering the plea agreement. Nor did he involuntarily or unknowingly sign it. Defendant asserts he would not have signed the plea agreement if he knowingly risked being sentenced "to life."[47] But the record reflects otherwise. Defendant's representations at the plea colloquy constitute a

---

[42] Tr. 11:13–17; D.I. 47 at A107; Tr. 17:7–23 (Defendant admitting that the facts presented by the State at the plea hearing "would be sufficient to support and warrant and garner a conviction").

[43] Tr. 17:7–23 (Defendant admitting that the facts presented by the State at the plea hearing "would be sufficient to support and warrant and garner a conviction").

[44] Tr. 10:16–20 (Defendant affirming that he had an opportunity with the assistance of Trial Counsel to go through in detail all the terms of the plea offer); 14:4–15:3 (Defendant affirming that he was pleading guilty because he was in fact guilty, sufficiently discussed the facts of the case and potential defenses with Trial Counsel).

[45] D.I. 32.

[46] D.I. 44.

[47] D.I. 32.

formidable barrier in any following collateral proceedings.[48] Here, the Truth-in-Sentencing Guilty Plea Form bearing Defendant's signature indicates the maximum penalty range as "life" and states "no one threatened or forced him" to enter the plea.[49] During the plea colloquy, Defendant also affirmed that he spent time with Trial Counsel to contemplate the plea offer before he signed it[50] and denied the need for any revisions to the plea offer.[51] This Court then explained to Defendant the statutory penalty of a maximum of life for each murder count, and Defendant confirmed no one was forcing him to plead guilty.[52] Defendant's feigned ignorance of the consequences of his plea are controverted by the record.

Fourth, Trial Counsel did not fail to assist Defendant's move to withdraw his *Robinson* plea. In support of deficient counsel, Defendant relies on the United States

---

[48] *See supra* note 40.

[49] D.I. 47 at A107.

[50] Tr. 10:4–14.

[51] Tr. 11:1–9.

[52] Tr. 12:22–13:23 ("THE COURT: Below that are the two counts of murder second degree and it sets for the statutory penalty on each, which is a minimum of 15 years to a maximum of life on each of these. So all told you are looking at a minimum of 30 years and a maximum of life on these. And you understand that these are just recommendations, what the State's offering you; the sentencing judge can sentence you up to life on these, notwithstanding the State's recommendation. Do you understand that? THE DEFENDANT: Yes. THE COURT: Okay. And your attorney has indicated that he's gone over [the plea agreement] in detail with you, you've answered the questions accurately, correct? THE DEFENDANT: Yes. . . . THE COURT: Do you have any questions about [the plea agreement]? THE DEFENDANT: No sir."); Tr. 14:1–3 ("THE COURT: Is anyone forcing you to plead guilty today? THE DEFENDANT: No.").

12

Court of Appeals for the Ninth Circuit's decision in *United States v. Alvarez-Tautimez.*[53] There, defendant's counsel was aware of a co-defendant's successful motion to suppress, yet failed to act;[54] instead, counsel indicated to the defendant that there was little chance of successfully withdrawing his guilty plea.[55] Unlike *Alvarez-Tautimez*, a motion to withdraw a plea was filed and considered by this Court in the instant matter. Defendant claims he told Trial Counsel he wanted to withdraw, but to no avail.[56] Defendant then filed a motion to withdraw before sentencing, *pro se*, and wrote this Court in December 2020 that he sent letters and left voicemails for Trial Counsel.[57] Trial Counsel does not recall Defendant attempting to withdraw his plea before sentencing;[58] however, in this instance, even if Trial counsel failed to act, there is no evidence Defendant suffered any prejudice because a motion to withdraw was considered – and denied – by this Court.

The Court concludes Defendant failed to demonstrate Trial Counsel's performance was objectively unreasonable and instead credits Defendant's

---

[53] 160 F.3d 573 (9th Cir. 1998) (reversing the lower court's denial of a postconviction claim because a guilty plea could be freely withdrawn at any time before it was accepted, but no plea was filed).

[54] *Id.* at 576–77.

[55] *Id.* at 575.

[56] D.I. 28.

[57] *Id.*

[58] D.I. 44.

statements regarding during the guilty plea colloquy. Nor did Defendant show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## C. Defendant's Other Claims for Relief Lack Factual Merit.

Defendant's remaining claims lack merit and do not warrant postconviction relief. Contrary to Defendant's assertion, neither the State nor this Court breached the Plea Agreement. As a preliminary matter, the Plea Agreement exists between the State and the Defendant. The Court is not bound by the statements or recommendations set forth therein; consequently, the Court cannot "breach" the agreement. At his plea colloquy, Defendant also acknowledged that the Plea Agreement and Truth-in-Sentencing Guilty Plea Form reflected the minimum penalty and maximum statutory penalty of life.[59] Defendant was fully informed by the State, his Trial Counsel, and this Court of the statutory range of penalties before this Court accepted his *Robinson* plea. Although not required to do so, the Court then sentenced Defendant to less than the maximum penalty, life. Even if a claim of breach of a Plea Agreement by the State were a basis for postconviction relief, the record evidence does not support Defendant's allegation. Likewise, the Court rejects Defendant's claim he is entitled to postconviction relief as "he is innocent" because

---

[59] *See supra* note 52.

the State did not establish his guilt of all the elements of the charges. Defendant's claim is belied by his own admissions during the plea colloquy, which constitute a formidable barrier to his Motion.[60] Defendant affirmed that he was pleading guilty to the two charges - because he was in fact guilty of them.[61]

## CONCLUSION

In sum, this Court finds Defendant's claims timely, but unmeritorious. Trial Counsel sufficiently communicated with Defendant throughout his representation—particularly before, during, and after the plea colloquy. The record is absent any evidence of Defendant indicating to Trial Counsel that he sought to withdraw his *Robinson* plea. Moreover, Defendant's Motion lacks concrete allegations of ineffectiveness to overcome the strong presumption that Trial Counsel conducted himself in a professionally reasonable manner. Defendant understood his plea agreement and voluntarily entered a *Robinson* plea. Defendants' Motion is DENIED.

**IT IS SO ORDERED.**

*/s/ Kathleen M. Vavala*
The Honorable Kathleen M. Vavala

---

[60] *See supra* note 41.

[61] Tr. 14:4–7.